[Crim. No. 7282. Second Dist., Div. Three. Nov. 23, 1960.]

THE PEOPLE, Respondent, v. LAVERNE SCOTT et al., Defendants; CLYDE LEON DAVIS, Appellant.

Clyde Leon Davis, in pro. per., for Appellant.

Stanley Mosk, Attorney General, and S. Clark Moore, Deputy Attorney General, for Respondent.

FORD, J.—This appeal is taken by the appellant Davis, proceeding in propria persona, from "my conviction and sentence." We consider it to be an appeal from the judgment. (*People* v. *Hollis,* 176 Cal.App.2d 92, 94 [1 Cal.Rptr. 293]; see *People* v. *Robinson,* 43 Cal.2d 143, 145 [271 P.2d 872].)

On December 16, 1959, an indictment was presented to the court and filed with the clerk in which it was charged that the appellant (therein named as Clyde Means) and one Laverne Scott (Rowe) violated section 11501 of the Health and Safety Code in that they did "sell, furnish and give away" heroin. On February 9, 1960, the public defender was appointed to represent the appellant, the appellant was arraigned and the time for pleading to the indictment was continued to February 15, 1960. On the latter date, he entered a plea of not guilty and his trial was set for February 17, 1960. On the day of the trial, his counsel made a motion to dismiss the indictment pursuant to section 1382 of the Penal Code on the ground that the appellant had not been brought to trial within 60 days after the finding of the indictment. The motion was taken under submission and the matter continued to the next day. On February 18, 1960, that motion was withdrawn and, on the motion of the appellant, the trial was continued to February 29, 1960.

When the case was called on the date last mentioned, the indictment was amended by the addition of allegations that the appellant had theretofore been convicted of a felony on two occasions, one conviction being for attempted burglary and the other for violation of section 11500 of the Health and Safety Code. He denied such allegations. On his motion, the date of trial was postponed to March 17, 1960, and thereafter, on his motion, to April 1, 1960. In the meantime, on March 21, 1960, the motion of the public defender to be relieved as counsel for the defendant was denied.

On April 1, 1960, a trial by jury was waived and the trial was completed. The appellant was found guilty. His motion to strike the allegation as to a prior conviction for attempted

burglary was granted and the determination with respect to the other allegation of a prior conviction was continued to April 20, 1960, the date of the probation hearing and sentence. On the latter date, it was found that the allegation as to the prior conviction under section 11500 of the Health and Safety Code, a felony, was true, probation was denied, and the appellant was sentenced to imprisonment in the state prison for the term prescribed by law.

A summary of the evidence will be given. William A. Payne, a police officer for the city of Los Angeles, testified that on September 1, 1959, he was ''working undercover'' with the narcotics detail. At about 3 p.m. he was in the vicinity of 56th Street and Ascot in that city. He was in his car with James Macklien and a person known as Charlie. The appellant came over to the car and there was a conversation as to narcotics. The officer and the appellant talked ''regarding who was going to get the narcotics.'' Macklien said he did not want to go. The appellant said that he was in a hurry and all should go. Macklien said that the witness was the one that should go with the appellant and that he would stay behind. The appellant said the price would be $50 for two spoons of heroin. The appellant entered the automobile and the officer drove to 56th and Compton where Charlie and Macklien got out of the automobile. Then the officer drove into a service station on the corner and the appellant asked him for the money. He gave the appellant $50. The officer then drove to 1356 East 56th Street and the appellant entered the house located there. In about 10 minutes he returned with Miss Rowe. The officer drove to 55th and Hooper where the appellant and Miss Rowe left the automobile. After Miss Rowe made a telephone call, the two went into a grocery store. In about 10 minutes they returned. The officer then drove to 42nd and Menlo where Miss Rowe alighted and walked north on Menlo and east on 42nd Street. In about 20 minutes she returned and handed to the officer two red balloons containing a substance. The appellant was then seated in the front seat of the automobile. The officer and the appellant then returned to 56th and Ascot where the officer saw Macklien. There the appellant asked for some money or part of the narcotics.

It was stipulated that a forensic chemist would be deemed to have testified that he examined the substance in the balloons and that, in his opinion, it was heroin.

On cross-examination, the officer testified that the ''purported purchase of heroin'' that Miss Rowe made was pre-

arranged by Macklien, known to the officer as "Slim," who was an informer for the police department. Before 3 p.m. on that day, Macklien told the officer that he had made arrangements to "make a buy" of two spoons of heroin. That day was the officer's first "contact" with the appellant. When he first saw the appellant, Clyde Davis, someone told him that his name was Clyde Means. The officer said that he could not be certain that the number of the house on 56th Street was 1356.

The appellant testified on his own behalf. On September 1 in the vicinity of 56th Street and Compton he had a conversation with a person known to him as Charlie. Earlier that day he had talked to Charlie when someone knocked on his door at 1350 East 56th Street at about 1 p.m. and asked to speak to him. He did not live at 1356 on that street. It was Charlie and he asked the appellant what he was doing and told him that Slim McLain (Macklien) was on the corner and would like to talk to the appellant. Slim stayed "two houses" from the appellant on the same side of the street. The appellant was at home because he had a date that day with Miss Rowe. He went to the corner to see what Slim wanted. Slim told him that he was giving a party for some "beatniks" and there would be some girls who used narcotics. Slim asked the appellant if he could get him some narcotics. The appellant told him he could not. He started back toward his house and he saw Miss Rowe approaching in an automobile. She alighted and walked across the street to him. They started to go to his house but Slim and Charlie called to them. She waited and he went on. He waited at the house for her to come. He saw a car drive up. He observed her in the automobile with Officer Payne. Slim and Charlie were not in sight. He went out to the car and asked her if she was going to come into his house. She said she would be back later but that he could go along with her. So he got into the automobile. He did not know the officer. After Payne drove her "where she was going," she left the car, was away 10 or 15 minutes, and returned. He had no conversation in the automobile with the officer about narcotics. He did not hear Miss Rowe mention the subject. The officer handed him no money and he asked him for none. He did not see the officer hand any money to Miss Rowe. They then returned to the appellant's house. Miss Rowe left the car and "went back to 56th Street." The appellant did not know where the officer went. The appellant went home. Miss Rowe came to his house later. The appellant did

not know that Miss Rowe had made "a deal" through Slim to "make a buy" of narcotics for Officer Payne that day.

On cross-examination, the appellant said that he was arrested on the current charge the first part of February. When he talked to Slim, it was about "three spoons of narcotics" for $50.

A tape recording was played with respect to "the conversation that took place between this defendant and the police officers, on February 8th, 1960, which pertains to the conversation that the defendant had with Laverne [Miss Rowe], on September 1st, 1959."

The appellant complains that the "informer" was not produced as a witness. But the prosecution is not required to call all persons shown to have knowledge of matters pertinent to the case. (*People* v. *Adame*, 169 Cal.App.2d 587, 599 [337 P.2d 477].) The appellant further claims that subpoenas issued on his behalf were not served and that his counsel let the trial proceed without enforcing his right to subpoena witnesses. But the record before us does not support such assertion and we cannot consider such matters merely on the suggestion of appellant in his brief.[1] (*People* v. *Collins*, 172 Cal.App.2d 295, 302 [342 P.2d 370]; *People* v. *Justice*, 167 Cal.App.2d 616, 622 [334 P.2d 1031]; *People* v. *McKinney*, 152 Cal.App.2d 332, 336 [313 P.2d 163]; *People* v. *Hernandez*, 150 Cal.App.2d 398, 402 [309 P.2d 969].) Moreover, the record discloses that the appellant received competent representation at all stages of the proceedings in the trial court. Mistakes of judgment on the part of the appellant's counsel which do not destroy the integrity of the proceeding as a trial—and the record does not disclose any—would not constitute a denial of due process. (*People* v. *Wein*, 50 Cal.2d 383, 411 [326 P.2d 457]; *People* v. *Dupree*, 156 Cal.App.2d 60, 69 [319 P.2d 39].) At this point it may also be noted that the record does not disclose why the public defender sought to withdraw as counsel for the appellant, but, in any event, the determination of whether such a motion should be granted rests in the discretion of the trial

---

[1] If we were permitted to go outside the record, the result would apparently be the same. In the appellant's closing brief, he sets forth a letter dated July 22, 1960, to him from the public defender in which it is stated: "You have also requested that I send you a copy of the subpoenas served on witnesses. In this regard, you will recall that although we did subpoena James Keller MacKlein (police informer), we did not call him at the trial and he was not present in court because, in my opinion, and as I have advised you, his testimony would have been detrimental to your interests."

court. (*People* v. *McCracken*, 39 Cal.2d 336, 350 [246 P.2d 913].) Here no abuse of such discretion appears.

The appellant asserts that he was advised by his counsel to withdraw his motion for dismissal of the indictment under section 1382 of the Penal Code "without understanding." We have already discussed the effect of an error of judgment on the part of counsel. ▮ But in this case it clearly appears that the motion was without merit. When the appellant was arraigned on February 9, 1960, he at least acquiesced in the continuance of the time for him to plead to the indictment to February 15, if he did not in fact request such continuance. On the latter date, the trial was set for February 17, 1960, without any objection on his part. Under such circumstances, he had waived the right he asserted in his motion. (*People* v. *Taylor*, [2]52 Cal.2d 91, 93 [338 P.2d 337]; *People* v. *Tahtinen*, 50 Cal.2d 127, 132 [323 P.2d 442]; *People* v. *O'Leary*, 130 Cal.App.2d 430, 436 [278 P.2d 933].) Further postponements of the date of trial were granted pursuant to the request of the appellant; he cannot complain with respect to a delay for which he asked.

The appellant attacks the credibility of Officer Payne. ▮ But the weight to be given to that witness' testimony was a matter for the determination of the trial court. (*People* v. *Valencia*, 156 Cal.App.2d 337, 342 [319 P.2d 377].) ▮ "It is the province of the trier of the facts to pass upon the credibility of the witnesses and determine the weight that should be given to their testimony; also, to resolve any conflicts and inconsistencies in their testimony, and this rule applies to conflicts and inconsistencies in the testimony of a particular witness." (*People* v. *Alonzo*, 158 Cal.App.2d 45, at 47 [322 P.2d 42].) ▮ There is no requirement that the officer's testimony be corroborated in a case of this character. (*People* v. *Garza*, 160 Cal.App.2d 538, 541 [325 P.2d 200]; *People* v. *McCrasky*, 149 Cal.App.2d 630, 635 [309 P.2d 115].)

---

[2]In the Taylor case, the Supreme Court held that there was no error in denying the motion there made under section 1382 of the Penal Code, stating at page 93: "The record shows that the indictment was filed September 12, 1957, but that no objection was interposed by defendant when she was arraigned on December 26, 1957, or when, after entry of her plea of not guilty on January 2, 1958, the trial date was set for February 11, 1958. . . . The consent of a defendant that his trial on a criminal charge be set for a date beyond the 60-day limit prescribed in section 1382, subdivision 2, of the Penal Code is equivalent to a postponement upon his application within the meaning of that section. . . . When a defendant fails to object at the time a cause is set for trial beyond the statutory period, consent is presumed."

Upon this appeal, the evidence and the inferences reasonably to be deduced therefrom must be viewed in the light most favorable to the People. This court may not reweigh the evidence or resolve conflicts therein in favor of the appellant. (*People* v. *Flummerfelt,* 153 Cal.App.2d 104, 105-106 [313 P.2d 912].) The trial court was warranted in reaching the conclusion that the appellant was a coparticipant with Miss Rowe in the sale of the heroin to the officer. (See *People* v. *Taylor, supra,* 52 Cal.2d 91, 94; *People* v. *Jones,* 176 Cal.App.2d 743, 749 [1 Cal.Rptr. 637].) "All persons concerned in the commission of a crime, . . . whether they directly commit the act constituting the offense, or aid and abet in its commission, . . . are principals in any crime so committed." (Pen. Code, § 31; see *People* v. *Taylor, supra,* 52 Cal.2d 91, 94.) The evidence was clearly sufficient to sustain the conviction of appellant.

In his closing brief, appellant makes some reference to the defense of entrapment. But at the trial his defense was that he did not commit the act charged rather than that there had been entrapment. (*Cf. People* v. *Branch,* 119 Cal.App.2d 490, 495 [260 P.2d 27]; *People* v. *Evans,* 134 Cal.App.2d 733, 737 [286 P.2d 368]; *People* v. *Johnson,* 99 Cal.App.2d 559, 562 [222 P.2d 58]; *People* v. *Lee,* 9 Cal.App.2d 99, 109 [48 P.2d 1003].) In any event, there is no support in the record for a claim of entrapment. The following language from *People* v. *Richardson,* 152 Cal.App.2d 310, at page 318 [313 P.2d 651], is particularly pertinent: "Moreover, there was an utter lack of evidence of any persuasion or inducement being used to get him to commit any crime, other than the ordinary conversation that would take place between a willing buyer and a willing seller. (See *People* v. *Evans,* 134 Cal.App.2d 733, 737 [286 P.2d 368].) Assuming Slim to be an informer, no inference of unlawful entrapment arises from the fact that Slim solicited appellant. (See *People* v. *Alamillo,* 113 Cal.App.2d 617, 620 [248 P.2d 421].)"

No error is apparent upon a careful consideration of the contentions and arguments made by the appellant in his briefs and a scrutiny of the record.

The judgment is affirmed.

Shinn, P. J., and Vallée, J., concurred.

A petition for a rehearing was denied December 8, 1960, and appellant's petition for a hearing by the Supreme Court was denied January 18, 1961.