[Crim. No. 8112.   Second Dist., Div. One.   Dec. 26, 1962.]

THE PEOPLE, Plaintiff and Respondent, v. HARRY BLACKWELL, Defendant and Appellant.

Harry Blackwell, in pro. per., for Defendant and Appellant.

Stanley Mosk, Atorney General, William E. James, Assistant Attorney General, and Jack E. Goertzen, Deputy Attorney General, for Plaintiff and Respondent.

LILLIE, J.—A jury found defendant guilty of petit theft with a prior petit theft conviction in violation of section 666, Penal Code. On appeal from the judgment of conviction he raises two issues—the lower court erred in denying his motion to dismiss under section 1382, Penal Code; and the deputy district attorney made improper and prejudicial remarks in his closing argument to the jury. He does not question the sufficiency of the evidence; the conviction is amply supported by the testimony of the victim and eye witness who supplied the details of the theft and identified defendant as the man who committed the same, defendant's confession to police upon his arrest, and proof of his prior conviction of theft, a misdemeanor, in 1955.

Appellant argues that the lower court lost jurisdiction because of its failure to bring him to trial within 60 days of the filing of the information as required by section 1382, Penal Code. The 60-day period expired on October 8, 1961; he was brought to trial on October 17, 1961.

The information was filed August 6, 1961. On August 14 defendant entered a not guilty plea; at his request he was substituted in propria persona; the trial was set for September 18, 1961, in department 110. However, prior to this date and on September 12, 1961, defendant filed an affidavit of prejudice against the judge; the court advanced the trial date from September 18 to September 12, accepted the affidavit, continued the cause to September 15, and transferred the same to department 100 for resetting. On September 15 the cause was reset for trial in department 111 on October 11, 1961. October 8, 1961, was the 60th day after the filing of the information, but neither on September 15, when the cause was reset for trial beyond the 60-day limitation, nor during the 60-day period, did defendant in any manner object to the trial date. In fact, on October 11, 1961, when the case was called for trial, defendant not only then again failed to object to being tried beyond the 60-day period, but moved the court for a continuance which motion was granted and the trial at his request was continued to October 16, 1961. It was not until October 16, 1961, when the cause was called for trial the second time that defendant voiced any objection; he then moved for a "dismissal due to lack of diligent prosecution"; the motion was denied. Department 111, then "being engaged and no other courts being open, this cause trailed to October 17, 1961." On October 17 the cause was transferred to department 31 for trial, forthwith; thus, defendant was tried on the 69th day after the filing of the information.

Section 1382, Penal Code, provides in pertinent part: "The court, unless good cause to the contrary is shown, must order the action to be dismissed in the following cases: . . .

"2. When a defendant is not brought to trial in a superior court within 60 days after the finding of the indictment or filing of the information . . .; except that an action shall not be dismissed under this subdivision if it is set for trial on a date beyond the 60-day period at the request of the defendant or with his consent, express or implied, or because of his neglect or failure to appear and if the defendant is brought to trial on the date so set for trial or within 10 days thereafter. . . ."

"The consent of a defendant that his trial on a criminal charge be set for a date beyond the sixty-day limit prescribed in subdivision 2, of section 1382, *supra* [Penal Code], is equivalent to a postponement upon his application

356

within the meaning of that section." (*Ray* v. *Superior Court,* 208 Cal. 357, 358, [281 P. 391].)

██ "When a defendant fails to object at the time a cause is set for trial beyond the statutory period, consent is presumed. (*Ray* v. *Superior Court, supra.*)" (*People* v. *Taylor,* 52 Cal.2d 91, 93 [338 P.2d 337].)

In *People* v. *Miller,* 190 Cal.App.2d 361 [11 Cal.Rptr. 920], the 60-day period expired January 5; the cause was tried on January 18. A contention similar to the one at bar was made therein. Said the court at page 365: "However, when on January 4 the matter was continued to January 18th, there is no indication that appellant voiced an objection, nor do the minutes disclose the reason or upon whose request the matter was so continued. Under these circumstances it will be presumed that the postponement was with the sanction of appellant. (See *People* v. *Baker,* 164 Cal.App.2d 99, 102-103 [330 P.2d 240].) ██ ■ "The purpose of an objection to a trial date beyond the 60-day period is to give the court an opportunity to fix an earlier date. If an objection is not made within the 60-day period, it cannot validly be made at all." ' (*People* v. *Contrerai,* 172 Cal.App.2d 369, 371 [341 P.2d 849].) The record shows no objections and no motion to dismiss during said 60-day period, and that any delays thereafter were for the benefit of appellant, or at his request." The defendant therein, as here, appeared in propria persona in the lower court.

██ Respondent argues that the delay between August 9 and October 11 was due to defendant's filing an affidavit of prejudice on September 12, 1961, and the consequent necessity for a new trial date; and had he not filed the same the cause would have been heard as originally set on September 18. While this action was for defendant's benefit, it appears that the delay caused thereby would not necessarily constitute a waiver, for the affidavit was filed, and the delay occurred well within the 60-day period. (See *People* v. *Miller,* 190 Cal.App.2d 361 [11 Cal.Rptr. 920].) However, the delay from October 11 to October 17 (after the 60-day period expired), for the benefit of defendant and at his request, was the result of his own motion to continue the trial.

In a document entitled "Affidavit of Additional Records on Appeal" appellant claims that the deputy district attorney committed prejudicial error in his argument to the jury by stating he was "involved in crimes of which he was not on trial for, that involved other people," that he "was

responsible for Sarah Segura (People witnesse) [sic] geting [sic] her two fingers cut." (Pp. 1, 2.)

Very briefly, the evidence shows the following. At approximately 2 p.m. defendant, with two women and another man, entered a market owned by Salvador Segura. Mrs. Segura asked him if she could do anything for him and defendant inquired the cost of a certain pair of pants; she replied that they were $6.00. He walked away from Mrs. Segura, folded the pants, placed them underneath black shorts he was wearing, and left the store without paying for them and without permission of the Seguras. He got into his car and started the motor. Mrs. Segura approached defendant and asked for the pants; he said he did not have them. While Mrs. Segura's hand was on the car door someone in the car slammed the door cutting her fingers; they bled and she began to scream, at which time defendant threw the pants out of the car and drove away. Mr. Segura took down the license number. After his arrest and en route to the hall of justice defendant stated to a police officer that he had committed a theft of a pair of trousers from the market. Defendant was convicted of theft, a misdemeanor under section 484, Penal Code, in the municipal court in Los Angeles on February 10, 1955, and served a term of imprisonment therefor.

On the stand defendant admitted he was in the market and, while Mrs. Segura was helping his wife, he looked at some pants. He testified that Mrs. Segura was agitated and running back and forth in the store saying something and he wondered what was wrong; that he left the store and Mrs. Segura came out to the car and demanded the pants; that he told her he did not have them, but Mrs. Segura made a second demand; that he looked around at the other three in the car who were laughing at Mrs. Segura and one of the women closed the door on Mrs. Segura's hand; that he asked if anyone in the car had the pants, one of the women produced them and he handed them to Mrs. Segura; and that he told neither Mrs. Segura nor police he took the pants, although he did confess to the crime after threats by police that they would prefer bogus charges against him and his wife.

The deputy district attorney in his argument, submitted to the jury the evidence offered at the trial that defendant had previously been convicted of, and served a term of imprisonment for, petit theft. Appellant's contention that this was error because it involved a crime for which "he was

not on trial for'' is without merit, for he was charged with petit theft with a prior petit theft conviction, a felony. It was necessary for the people to prove, as part of their case, the prior offense and that defendant had served a term therefor (Pen. Code, § 666). ''Every person who, having been convicted of petit larceny or petit theft and having served a term therefor in any penal institution . . . commits any crime after such conviction is punishable therefor as follows: . . .

''3. If a subsequent conviction is for petit theft, then the person convicted of such subsequent offense is punishable by imprisonment in the county jail not exceeding one year, or in the state prison not exceeding five years.'' Thus the prior petit theft conviction and term in the county jail (reference thereto of which appellant complains) constituted a part of the evidence the prosecution was required to present; under defendant's not guilty plea the prior conviction and service of jail term therefor were proper questions of fact for the jury.

Relative to the incident concerning Mrs. Segura's fingers, the deputy district attorney stated to the jury the fact that Mrs. Segura's fingers having been cut by the car door, the defendant drove off and left her screaming. At no time did he say that defendant was responsible for the cut fingers; on the contrary his statement followed defendant's own testimony that he saw the door slam on Mrs. Segura's fingers, that then she started screaming, that he saw her holding her hand up and blood coming out of her hand; that he did not stay around to see that she was cared for.

The deputy district attorney's reference to this testimony in his closing argument was in answer to defendant's effort in his argument to convince the jury that he ''tried to do good in this case and he gave those trousers back,'' although he could have gotten away at any time. He simply argued that defendant, was not any ''good samaritin [*sic*]'' or ''do gooder,'' for while Mrs. Segura was ''yelling and screaming and her fingers were caught in the door he drives off'' and ''[I]f he had done nothing wrong and felt nothing was wrong'' he wouldn't have driven away after his car door had slammed on Mrs. Segura's fingers and she was in pain, without aiding her.

For the foregoing reasons the judgment is affirmed.

Wood, P. J., and Fourt, J., concurred.