[Crim. No. 6657. First Dist., Div. One. Dec. 23, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. WILLIAM J. PRINCE, Defendant and Appellant.

Patricia A. Coleman, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Robert R. Granucci and Jerome C. Utz, Deputy Attorneys General, for Plaintiff and Respondent.

SIMS, J.—Defendant has appealed from a judgment sentencing him to concurrent state prison sentences following his conviction, after trial by the court, of petty theft with a prior felony conviction (Pen. Code, §§ 667, 484, 486 and 488), and of conspiracy (Pen. Code, § 182) to violate the provisions of section 488 of the Penal Code (petty theft, see §§ 484, 486 and 488), with an admitted prior conviction for burglary in the second degree.

After entry of the defendant's plea and before trial, the private counsel selected by defendant was permitted to withdraw, and the public defender, who already represented a codefendant, was then appointed to act for both defendants. Defendant contends that the court erred in permitting his private counsel to withdraw because it failed to make adequate inquiry into the circumstances; that the court erred in appointing the public defender to represent him because there was a failure to inquire into the possibility of a conflict of interest in the defenses of defendant and his codefendant, because the defendant never waived his right to a separate counsel, and because there was an actual conflict of interest; and that he was denied effective assistance of counsel because the public defender represented his codefendant as well as defendant. He further asserts that the information is prejudicially defective; that the evidence is insufficient to sustain his convictions; that the failure to charge and convict his codefendant, who was jointly charged and convicted on the conspiracy count, with the substantive charge of theft, necessitates the discharge of defendant; and that there was error in the failure to produce and receive certain demonstrative evidence. These contentions are examined and found wanting. It does appear, and the Attorney General concedes, that the defendant has been ordered to suffer multiple punishment for one act in violation of the provisions of section 654 of the Penal Code, and the judgment must be modified accordingly.

*The Facts*

On March 21, 1967, defendant William J. Prince and his codefendant Robert Page entered a department store in San Francisco. A saleslady, who was employed in the men's clothing section, approached the two men and asked if she could be of assistance. Defendant indicated he was looking for trousers,

and that he wanted to try on size 32. Although the saleslady stated that the size was too small, defendant persisted. Defendant continuously exited from and reentered the fitting room while trying on pants ranging among three sizes. During this time, the saleslady had to repeatedly return to the stockroom and the fitting room because she was out of certain sizes and styles requested by defendant. She could not see the customer area of the store from the stockroom. She did see Page in the vicinity of the men's suits, but since he appeared to be in the right section for his size she ignored him and "mainly waited" on defendant.

The two men remained in men's clothing section for approximately 30 minutes. Prior to leaving, defendant purchased a pair of corduroy trousers. The saleslady indicated that she did not remember any one else being in the fitting rooms at the time. She stated that defendant was wearing a stadium jacket or three-quarter length coat when he entered the store. She noticed that Page left the clothing shop before defendant.

When the two men entered the store they were observed by the store's special police officer, who was standing on the balcony of the second floor, in the men's clothing section. The officer saw defendant and Page enter, go directly up the staircase and begin looking at men's slacks. At the time there were about seven people on the floor. Defendant was wearing a black three-quarter length coat, which was a bulky type with large sleeves, and fit loosely. Underneath the coat he was wearing a turtleneck sweater. The officer noticed that the men were "eyeballing the area."[1] He concealed himself in a storeroom and observed the conduct of defendant and Page. He corroborated the saleslady's story that defendant tried on numerous pairs of slacks. However, he also observed that while defendant was trying on the slacks, Page was placing suits on a display rack approximately three feet from the fitting room used by defendant. After Page had placed three suits on this rack defendant selected a fourth suit, and took the suits and a pair of slacks into the fitting room. Defendant remained in the fitting room for 5 or 10 minutes and when he exited, his coat "was more full in its fit upon his body. There was a lack of looseness." Defendant proceeded to the cash register and paid for a pair of slacks. The two men then departed from the store. The officer left his observation point

[1]The officer defined "eyeballing" as a perusal of the area with eyes and head looking around quite heavily at the people in the area and at the merchandise.

and entered the fitting room area. He checked all of the fitting rooms, and found only four empty hangers and two clothespins. The officer then attempted to pursue the men. He left the store by the same exit they had taken, and saw them walking rapidly from the area. Page "turned around a number of times to look rearward, and for a period of time was running backwards." The men entered a black Cadillac and drove out of the parking lot before the officer could apprehend them.

The defendant and Page were arrested ten days later when defendant attempted to return the slacks he had purchased.

The two men testified in their own behalf. Defendant indicated his activities and those of Page had been as described by the saleslady, and that he had taken no merchandise from the store other than the slacks he had purchased. He testified that at the time he entered the store he was wearing a three-quarter length trench coat which had a little check. Underneath the coat he had on a brown Pendleton shirt. He stated there were eight or ten people on the floor at the time. He and Page returned to the store on March 31, 1967 to exchange the slacks because he wanted something better. On cross-examination, defendant admitted that he had previously been convicted of a felony.

Page also testified that he was innocent of any crime. He stated that he never removed a suit from one of the racks but merely looked at the suits. He testified that he was wearing a white turtleneck sweater on March 21, 1967, and that defendant was wearing a three-quarter length deep blue check jacket. He stated that there were some five boys on the floor on March 21st, and that one boy was in the fitting rooom during the time defendant was trying on the slacks. He stated that when defendant went to the cash register to pay for the slacks he started downstairs to look at other merchandise. He and defendant left the store and drove away in a 1958 blue Cadillac.

## Withdrawal of Counsel

The defendant appeared four times with counsel of his selection. On the first two appearances continuances were requested. On the third occasion the defendant entered his plea of not guilty to both counts of the information and denied the alleged prior conviction. By consent the matter was continued to be set for trial. At the time fixed for setting, the following occurred: "Mr. Smith: At this time, your Honor, with respect to Mr. Prince, I would request permission to be

allowed to withdraw from Mr. Prince's representation. I have been unable to secure his cooperation. I believe he has no objection. The Court: Do you have anything to say about that, Mr. Prince? Defendant Prince: Your Honor, the only thing I have to say, sir, is I guess I will have to take the Public Defender, because I don't have any more funds. It's not a matter of non-cooperation; its because I don't have any money. The Court: Well, that's another word the lawyers use for money, Mr. Prince. Defendant Prince: Well, I just want to make sure. . . . The Court: All right, your motion is granted, Mr. Smith.''

Defendant's allegations of error attack both the procedure followed and the substance of the court's ruling. In *People* v. *Bouchard* (1957) 49 Cal.2d 438 [317 P.2d 971] it was established that the procedural requirements of sections 284 and 285[2] of the Code of Civil Procedure govern a change of attorney in a criminal, as well as in a civil, proceeding. In *Brouchard* the court, because of an admitted failure to comply with those sections, denied the defendant's attorney's motion to quash service of the People's brief in an appeal from an order granting the defendant's motion to set aside an information. In other cases applying the statute the courts have recognized the right of an attorney of record, and his client, defendant, to be protected against improvident proceedings by the latter in person without the consent of or notice to the attorney (*In re Martinez* (1959) 52 Cal.2d 808, 812 [345 P.2d 449]), the right of the court to require the defendant to proceed with the attorney he originally selected when an attempted substitution of the defendant in *propria persona* was not served upon the prosecution until the day of trial, and the defendant was unwilling at that time to proceed without counsel (*People* v. *Garabito* (1966) 244 Cal.App.2d 549, 552-553 [53 Cal.Rptr. 152]), and the right of the defendant to have notice and an opportunity to object before the court grants the attorney's motion to be discharged (*People* v.

[2]These sections provide and provided, insofar as is pertinent to the case: ''284. The attorney in an action or special proceeding may be changed at any time before or after judgment or final determination, as follows: 1. Upon the consent of both client and attorney, filed with the clerk, or entered upon the minutes; 2. Upon the order of the court, upon the application of either client or attorney, after notice from one to the other [the remaining part of the section, which was not pertinent to this case was deleted by Stats. 1967, ch. 161, § 1, p. 1246].''

''285. When an attorney is changed, as provided in the last section, written notice of the change and of the substitution of a new attorney, or of the appearance of the party in person, must be given to the adverse party. Until then he must recognize the former attorney.''

*Kerfoot* (1960) 184 Cal.App.2d 622, 634-636 [7 Cal.Rptr. 767]).

Defendant seeks to come within the ambit of *Kerfoot.* In that case a separate private practicing attorney had been appointed to represent each of two joint defendants. Following the first trial which terminated with a jury disagreement, each attorney appeared and made a motion for dismissal on behalf of his client. Following the denial of those motions, each made a motion to be relieved as appointed counsel, and the court immediately granted each motion. Thereafter, the court appointed the public defender to represent both defendants. The court observed on this phase of the case, ''Neither of the defendants was asked by the judge as to whether he consented to having his attorney withdraw from the case. It is obvious that Demes would not have consented to the withdrawal of Edwards as his attorney had he known that the judge was going to proceed as he did. In any event Demes did not give his consent to the withdrawal of Edwards as his attorney; he had received no notice that such a motion to withdraw was going to be made, and nothing was explained to him in advance with reference to the consequences of such a motion and the granting thereof. True it is that the matter of whether an attorney shall be relieved or not is within the sound discretion of a court but the appellant was entitled to notice, and in all fairness the matter should have been explained to him.'' (184 Cal.App.2d at p. 635.)

In the instant case the colloquy reveals that the attorney had discussed with the defendant, the question of his compensation and his prospective withdrawal because of the defendant's inability to pay him. The court asked the defendant for comment. The defendant's remarks, although they may be interpreted as a qualified consent which was induced by the circumstances, clearly acknowledge that the defendant was aware that he could not have the counsel of his choice unless the court was going to order the attorney to represent him without any assurance that defendant would furnish the compensation for those services. As noted below, there was no such duty on the court. That the defendant was aware of the consequences is apparent from his statement ''. . . I guess I will have to take the Public Defender, because I don't have any more funds.'' The minutes, however, do not reflect the consent of the defendant (see Code Civ. Proc., § 284, subd. 1). They merely recite, ''Counsel for defendant Prince interposes a

motion to withdraw as counsel for this cause, which is granted by the court.''

The situation is similar to that in *People* v. *Donel* (1967) 255 Cal.App.2d 394 [63 Cal.Rptr. 168], where the attorney who previously appeared for the defendant failed to appear, and the defendant stated, ''Well, not having seen Mr. Arthur, I think that I will go with the Public Defender,'' and then affirmed that he wanted the court to appoint the public defender. The court held that the defendant was not prejudiced by the failure to strictly comply with the provisions of sections 284 and 285 of the Code of Civil Procedure. (255 Cal. App.2d at p. 401. See also, *In re Martinez, supra,* 52 Cal.2d at p. 814; *People* v. *Bourland* (1966) 247 Cal.App.2d 76, 86 fn. 3 [55 Cal.Rptr. 357]; and *People* v. *Garabito, supra,* 244 Cal.App.2d at p. 554.)

■ ''Having undertaken the defense of a criminal case an attorney must continue with his services until he is released by the client or by the court. He may apply to the court for release from further services and for good cause shown may be released, but he may not abandon his representation at will, nor for considerations personal to himself. (Bus. & Prof. Code, § 6068.)'' (*People* v. *Massey* (1955) 137 Cal.App.2d 623, 626 [290 P.2d 906].) ■ The question of granting or denying an application of an attorney to withdraw as counsel (Code Civ. Proc., § 284, subd. 2) is one which lies within the sound discretion of the trial court ''having in mind whether such withdrawal might work an injustice in the handling of the case.'' (*People* v. *McCracken* (1952) 39 Cal.2d 336, 350 [246 P.2d 913]. See also, *People* v. *Collins* (1966) 242 Cal.App.2d 626, 636-637 [51 Cal.Rptr. 604]; *People* v. *Scott* (1960) 186 Cal.App.2d 661, 666-667 [9 Cal.Rptr. 75]; *People* v. *Mullane* (1960) 182 Cal.App.2d 765, 769-770 [6 Cal.Rptr. 341]; and *Linn* v. *Superior Court* (1926) 79 Cal.App. 721, 725-726 [250 P. 880].) In each of the cited cases the court upheld the trial court's order denying the attorney's motion to withdraw. Possible prejudice to the interests of those who were entitled to have the case proceed was apparent in each case. ■ Here the motion was timely made, before the case was set for trial, and there is no showing that the withdrawal prejudiced the defendant, the prosecution, or the smooth course of administration of justice. ■ It is generally recognized that the failure or refusal of a client to pay or secure the proper fees or expenses of the attorney after being reasonably requested to do so will furnish grounds for the attorney to withdraw from the case. (7 C.J.S., Attorney and Client, § 110

p. 943; 7 Am.Jur.2d, Attorneys at Law, § 144, p. 134.)
■ Canon 44 of the American Bar Association recognizes that an attorney may be warranted in withdrawing from employment after notice to the client if the client "deliberately disregards an agreement or obligation as to fees or expenses."

■ No abuse of discretion is found in permitting the attorney to withdraw. Prejudice, if any, to the right of defendant to effective representation by counsel must be found in the subsequent acts or omissions of the court in furnishing defendant counsel.

### Failure to Appoint Separate Counsel

Immediately following the foregoing preceedings, the clerk interjected, "Is the Public Defender appointed, your Honor?" Thereupon the following ensued: "The Court: The Public Defender will be appointed. Is there any conflict here, Mr. Magee? Mr. Magee: I couldn't see any here as I looked through the transcript. I haven't talked to Mr. Prince yet. I don't know if any conflict will appear after I speak to him. Mr. Maurer: Have they both entered pleas, Mr. Halkens? The Clerk: It was on to be set today. Mr. Maurer: How about June 19th, Mr. Magee? (Discussion between Mr. Magee and Mr. Prince and Mr. Page.) Mr. Magee: Your Honor, both defendants are prepared to waive their rights to a trial before a jury and have it heard before the Court. Mr. Page is on bail, but Mr. Prince is in custody, so possibly we could get a date set today and if a case opens up or some afternoon opens up we could advance it. . . . The Court: Mr. Page and Mr. Prince, Mr. Magee has indicated that each of you are willing to waive your rights to trial by jury, and you understand what that is? Mr. Prince: Yes, your Honor. Mr. Page: Yes. The Court: In a trial by jury you have twelve people sitting in the jury box who listen to all the evidence, listen to the People's witnesses and your witnesses, and they decide from the evidence your guilt or innocence. Mr. Prince: Yes. Mr. Page: (Nods head affirmatively.) The Court: And you are willing to waive that privilege and that right? Mr. Prince: Yes, sir. Mr. Page: (Nods head affirmatively.) The Court: And you understand that the matter will be tried as a court case and that I will listen to all the testimony and I will decide your guilt or innocence from the testimony that is presented. Mr. Prince: Yes, your Honor."

The case came on for trial eleven days later, on the date as

signed at the preceding hearing. At that time the court made no further inquiry concerning possbile conflict of interest, but the public defender acknowledged in open court that he was representing both defendants, and that both defendants were prepared to proceed. Before proceeding the defendant Prince, both personally and through counsel, withdrew his earlier denial of the prior conviction, and admitted the allegations of the complaint which charged the previous offense.

■ The right to separate counsel recently has been reviewed by the highest court of this state, and it has promulgated the following principles: ''The right to counsel at trial guaranteed by the Sixth Amendment of the United States Constitution [citation] and article 1, section 13 of the California Constitution does not include an automatic right to separate counsel for each codefendant. One counsel may represent more than one defendant so long as the representation is effective. [Citations.] ■ Effective assistance of counsel is assistance 'untrammelled and unimpaired by a court order requiring that one lawyer shall simultaneously represent conflicting interests.' (*Glasser* v. *United States* (1942) 315 U.S. 60, 70 [86 L.Ed. 680, 699, 62 S.Ct. 457] ; citation omitted.) ■ If counsel must represent conflicting interests or is ineffective because of the burdens of representing more than one defendant, the injured defendant has been denied his constitutional right to effective counsel. [Citations.]

''If defendants were denied the right to effective representation of counsel, we cannot presume that the right was waived by a failure to request separate counsel. The court did not advise them of their right to separate counsel if a conflict was present, and we cannot imply from their silence a waiver of that right. [Citations.]'' (*People* v. *Chacon* (1968) 69 Cal.2d 765, 774 [73 Cal.Rptr. 10, 447 P.2d 106].)

In *Chacon* the court observed, ''Conflicts of interest necessarily exist when the jury must fix the penalty for more than one defendant. . . . Moreover, the conflict is not limited to the trial on the issue of penalty, for normally the same jury determines both the issue of guilt and the issue of penalty.'' (*Id.* p. 775.)

In *People* v. *Watkins* (1967) 248 Cal.App.2d 603 [56 Cal. Rptr. 734], which is cited with approval in *Chacon* (69 Cal.2d at p. 774) the court stated: ''The *Odom* decision [*People* v. *Odom* (1965) 236 Cal.App.2d 876 at p. 878 [48 Cal.Rptr. 453]] assembles a useful catalog of the principal situations in which the courts have discerned conflicts of interest: 'Conflicts of interest among codefendants may arise when it would

profit one defendant to attack the credibility of another [citation]; when counsel would be restricted in final summation because he might injure one defendant by arguments in favor of another [citation]; when one defendant has a record of prior felony convictions and the others do not [citation]; when the defenses of codefendants are factually inconsistent [citation]; or when appointed counsel believes a conflict of interest may exist [citation].' '' (248 Cal.App.2d at p. 606. See also, *People* v. *Perry* (1966) 242 Cal.App.2d 724, 729-730 [51 Cal.Rptr. 740].)

▮ Tested by these criteria the present case presents no conflict which deprived this defendant of effective representation by counsel. Each ''defendant denied any knowledge of or participation in the offenses charged. The state of the evidence was such that if the jury believed the prosecution witnesses, both were guilty; if not, both were innocent. There was no material inconsistency between the stories of [codefendant] and defendant and no significant conflict in their separate denials.'' (*People* v. *George* (1968) 259 Cal.App.2d 424, 433 [66 Cal.Rptr. 442]. See also, *People* v. *Wilkins* (1967) 251 Cal.App.2d 823, 826-827 [60 Cal.Rptr. 49]; *People* v. *Watkins, supra,* 248 Cal.App.2d 603, 607-608; *People* v. *Odom, supra,* 236 Cal.App.2d 876, 878-880; and *People* v. *Welch* (1963) 212 Cal.App.2d 397, 401-402 [28 Cal.Rptr. 112]; and cf. *Glasser* v. *United States* (1942) 315 U.S. 60, 72-76 [86 L.Ed. 680, 700-702, 62 S.Ct. 457]; *People* v. *Douglas* (1964) 61 Cal.2d 430, 436 [38 Cal.Rptr. 884, 392 P.2d 964]; *People* v. *Robinson* (1954) 42 Cal.2d 741, 747-748 [269 P.2d 6]; *People* v. *Lanigan* (1943) 22 Cal.2d 569, 576-577 [140 P.2d 24, 148 A.L.R. 176]; *People* v. *Keesee* (1967) 250 Cal.App.2d 794, 797 [58 Cal.Rptr. 780]; *People* v. *Perry, supra,* 242 Cal. App. at pp. 728-730; *People* v. *Donohoe* (1962) 200 Cal.App. 2d 17, 28 [19 Cal.Rptr. 454]; *People* v. *Kerfoot, supra,* 184 Cal.App.2d 622, 637; and *Lollar* v. *United States* (D.C. Cir. 1967) 376 F.2d 243, 247-248.)

Defendant suggests that the fact that he had a prior conviction, whereas his codefendant did not, created a conflict of interest. It has been recognized that the first offender may be prejudiced when he is required to accept common counsel with a codefendant with a prior record, particularly where there is more persuasive evidence of the culpability of the latter than of the former. (See *People* v. *Douglas, supra,* 61 Cal.2d 430, 436; *People* v. *Donohoe, supra,* at p. 28; *People* v. *Lanigan, supra,* at pp. 576-577; *People* v. *Watkins, supra,* at p. 607;

and *People* v. *Odom, supra* at p. 878.) In *Watkins, supra,* and *Douglas, supra,* it was analyzed as follows: "There defendant A had a record of prior felony convictions while defendant B did not. An attorney representing both defendants could not call A to testify without risking his impeachment; could not keep A off the stand and call B to testify without having the jury draw inferences against A. Thus his joint representation hampered his tactical decisions." (248 Cal. App.2d at p. 607.)

In this case the testimony of defendant and that of his co-defendant were complementary. If separate counsel had elected to keep defendant off the stand, his codefendant's testimony would have been uncorroborated. It may also be noted that under the aegis of separate counsel the codefendant's testimony might have been developed to be more favorable to himself and less favorable to defendant. It is true that when defendant took the stand he subjected himself to impeachment on the grounds of his prior conviction. It is conceivable that by requesting a jury trial and by not taking the stand the defendant could have avoided the stigma of the prior conviction (see discussion, *infra*), but this course would have involved the risk of failing to deny the overwhelming evidence against him.

Once the jury trial was waived, a tactical move in which defendant joined, any prejudice to defendant from the fact of his prior conviction was inherent in the charge which he faced and could not be avoided by the strategy of counsel. His prior conviction was in the case whether he testified or not. The major prejudice or conflict that can be precipitated from the record is that which might have affected the codefendant because he was stigmatized as the accomplice of an acknowledged felon, and may have been deprived of an opportunity to shift the entire responsibility to defendant in view of their relative participation in the events giving rise to the charges. He, however, has not appealed from his conviction. No conflict is found which prejudiced defendant or rendered the public defender's joint representation of him, with his codefendant, ineffective.

Defendant's complaints that the court failed to make adequate inquiry into the question of possible conflict, or secure an adequate waiver of his right to separate counsel (see *People* v. *Chacon, supra,* 69 Cal.2d at p. 773; and *Lollar* v. *United States, supra,* 376 F.2d at pp. 245-246), even if sustainable, are rendered harmless because no actual conflict

existed. (*People* v. *George, supra,* 259 Cal.App.2d at pp. 433-434.) It is noted, however, that the court did inquire as to possible conflict. The reply of the public defender indicated that he would investigate the matter. It is fair to assume that the public defender, who already was familiar with the record of the preliminary examination, did actually investigate the matter and that he would have advised the court if he determined that any prejudice would result from the multiple representation. (See *People* v. *Tomita* (1968) 260 Cal. App.2d 88, 93 [66 Cal.Rptr. 739] ; *People* v. *Wilkins, supra,* 251 Cal.App.2d 823, 827; and *People* v. *Odom, supra,* 236 Cal.App.2d 876, 879.) It is unnecessary to determine what effect the colloquy in open court between the judge and counsel, and the subsequent acquiescence of defendant, has upon his subsequent claim that he was not advised of any right to have separate counsel if there was a conflict (cf. *People* v. *Chacon, supra,* where certain defendants had indicated a desire not to be represented by the counsel who had originally been appointed to represent several defendants).

Defendant seeks to being before this court extrinsic matter concerning the workload in the public defender's office[3] in order to support his claim that he did not receive adequate and effective assistance of counsel. The record in this case does not indicate that there actually was any inadequate or ineffective representation by counsel, so it is unnecessary to pursue at this stage of the proceedings, defendant's right, or the procedure to be followed, to bring such matters before this court. Defendant has failed to point out any "circumstances from which it might be inferred that his trial was reduced by his counsel's lack of diligence [whether from overwork or other causes] to a farce or a sham. . . ." [*People* v. *Tomita, supra,* 260 Cal.App.2d 88, 93. See also, *People* v. *Ferguson* (1967) 255 Cal.App.2d 493, 495-496 [63 Cal.Rptr. 93] ; and *People* v. *Jolke* (1966) 242 Cal.App.2d 132, 140 [51 Cal. Rptr. 171].)

No error has been demonstrated in appointing the public defender to represent defendant as well as his codefendant.

*Validity of the Information and Reference to Prior Conviction*

The first count of the information reads as follows: "WILLIAM J. PRINCE is accused by the District Attorney of

---

[3]Reference is made to a newspaper article, "Turnstyle Justice," San Francisco Examiner, November 1, 1967; to the Annual Report, Public Defender, City of San Francisco, July 1, 1966-June 30, 1967; and to a letter from the public defender to the mayor, dated September 5, 1967 requesting additional attorneys.

the City and County of San Francisco, State of California, by this information, of the crime of felony, to wit: VIOLATING SECTION 667 OF THE PENAL CODE OF THE STATE OF CALIFORNIA (Petty theft with prior conviction of a felony) committed as follows: The said defendant on or about the 21st day of March, 1967, at the City and County of San Francisco, State of California, did unlawfully take the personal property of Roos ATKINS, of a value of less than $200, having been previously convicted, on or about the 2nd day of January, 1964, in the Superior Court of the State of California, in and for the County of Orange, of the crime of BURGLARY, 2nd Degree, a felony, and having served a term of imprisonment therefor in the State Prison."

Section 667 of the Penal Code reads: "Every person who, having been convicted of any felony either in this State or elsewhere, and having served a term therefor in any penal institution or having been imprisoned therein as a condition of probation for such offense, commits petty theft after such conviction, is punishable therefor by imprisonment in the county jail not exeeding one year or in the state prison not exceeding five years."

Defendant contends that section 667 merely provides for the punishment of a crime where there is a prior conviction, and does not define an offense. (See *People* v. *Stoddard* (1948) 85 Cal.App.2d 130, 138 [192 P.2d 472].) "Due process of law requires that an accused be advised of the charges against him in order that he may have a reasonable opportunity to prepare and present his defense and not be taken by suprise by evidence offered at his trial. [Citations.]" (*In re Hess* (1955) 45 Cal.2d 171, 175 [288 P.2d 5]); and the failure of an indictment or information to state facts constituting a public offense may be taken advantage of at any stage of the proceedings. (*People* v. *Schoeller* (1950) 96 Cal.App.2d 61, 62 [214 P.2d 565].)

Defendant's objection is frivolous. It is unnecessary to determine whether a charge in the language of section 667 would be sufficient. (See Pen. Code, § 952; *People* v. *Brown* (1942) 52 Cal.App.2d 428, 429-430 [126 P.2d 406]; and *People* v. *Willison* (1932) 122 Cal.App. 760, 762 [10 P.2d 766].) The allegations set forth above fully and fairly set forth the offense with which the defendant was charged. (*In re Mitchell* (1961) 56 Cal.2d 667, 668-670 [16 Cal.Rptr. 281, 365 P.2d 177]; *People* v. *Shanklin* (1966) 243 Cal.App.2d 94,

100-101 [52 Cal.Rptr. 28] [disapproved on other grounds *People* v. *Merriam* (1967) 66 Cal.2d 390, 398 [58 Cal.Rptr. 1, 426 P.2d 161]] ; *People* v. *Moranda* (1963) 222 Cal.App.2d 424, 425-426 [35 Cal.Rptr. 231].) The failure to refer in the information to sections 484, 486 or 488 of the Penal Code is not a ground for objection: "In charging theft it shall be sufficient to allege that the defendant unlawfully took the labor or property of another." (Pen. Code, § 952, part.) The defendant cannot at this stage of the proceedings successfully advance any objections to the form of the indictment. (Pen. Code, §§ 960 and 1012; *People* v. *Schoeller, supra,* 96 Cal.App. 2d 61, 64.)

 Defendant further contends that in any event it is improper to charge and consider the prior offense until after the elements of the current offense have been established, because the knowledge of the prior conviction prejudices him in the trial on the merits. (See *Spencer* v. *Texas* (1967) 385 U.S. 554, 562 [17 L.Ed.2d 606, 613, 87 S.Ct. 648] ; *People* v. *Rolon* (1967) 66 Cal.2d 690 [58 Cal.Rptr. 596, 427 P.2d 196].) The law requires that the prior offense be alleged, and that the defendant state whether he has or has not suffered the previous conviction. (Pen. Code, §§ 969 and 1025.) Due process of law does not preclude all reference to prior offenses prior to determination of guilt. (*Spencer* v. *Texas, supra,* 385 U.S. 554.) Defendant's complaint is really with the procedure whereby the knowledge of his prior conviction was imparted to the trier of fact.

Defendant originally plead not guilty to both counts in the information and denied a separately alleged prior conviction of the same offense that was incorporated in the first count. At the time set for trial, and before the trial commenced, he admitted the prior conviction.

When the offense is elevated from a misdemeanor to a felony, or the punishment is aggravated by reason of a prior conviction, an unqualified denial of the offense or the denial of the prior conviction requires the prosecution to come forward with proof of the prior offense. (Pen. Code, §§ 1025 and 1158; *People* v. *Hickok* (1964) 230 Cal.App.2d 57, 59-60 [40 Cal. Rptr. 687] ; *People* v. *Blackwell* (1962) 211 Cal.App.2d 353, 357-358 [27 Cal.Rptr. 221] ; *People* v. *Pitts* (1961) 196 Cal. App.2d 841, 844 [16 Cal.Rptr. 879].) However, when the defendant admits the prior offense it is error to bring the prior conviction to the attention of the jury (Pen. Code, §§ 1025 and 1093, subd. 1; *People* v. *Fairchild* (1967) 254

Cal.App.2d 831, 837 [62 Cal.Rptr. 535]; *People* v. *Gall-inger* (1963) 212 Cal.App.2d 851, 854-856 [28 Cal.Rptr. 472]; and see *People* v. *Cooks* (1965) 235 Cal.App.2d 6, 10-12 [44 Cal.Rptr. 819].)

Defendant, in effect, claims prejudice because his admitted prior was known to the judge who heard the evidence relating to the current offense and decided that issue. It must be presumed that the court followed the law, and disregarded the prior conviction in determining the issue of guilt of the new offense. Moreover, the record in this case shows that defendant proceeded to trial without objection before the same judge who received his admission concerning the prior conviction. Finally, he cannot show prejudice, because the prior felony conviction was admissible and in fact was admitted to impeach the defendant when he took the stand to testify on his own behalf.

A record of the prior conviction was in fact introduced in evidence before defendant took the stand, but at that time no objection was interposed by defendant. He may be deemed to have consented to the admission of such evidence for the purpose of establishing that element of the substantive offense even though it had been previously admitted. (See *People* v. *Pitts, supra,* 196 Cal.App.2d 841, 844.) For the reasons stated above no error is demonstrated.

Defendant further suggests that the charge as framed under section 667 in some manner operates as an ex post facto law (See *People* v. *Ward* (1958) 50 Cal.2d 702, 706-708 [328 P.2d 777] [distinguished on other grounds *People* v. *Morse* (1964) 60 Cal.2d 631, 649 [36 Cal.Rptr. 201, 388 P.2d 33, 12 A.L.R.3d 810]].) It suffices to state that the constitutionality of provisions such as are contained in section 667 have consistently been upheld against attack on constitutional grounds. (*People* v. *Brown* (1961) 198 Cal.App.2d 232, 237 [17 Cal.Rptr. 789]; *People* v. *Collins* (1959) 172 Cal.App.2d 295, 301 [342 P.2d 370]; *People* v. *Quiel* (1945) 68 Cal.App. 2d 674, 680 [157 P.2d 446].)

*Sufficiency of the Evidence*

Defendant points to some discrepancies in the testimony elicited from each of the prosecution's two witnesses. He claims that as a result the evidence of guilt is no more than a strong suspicion. (See *People* v. *Briggs* (1967) 255 Cal.App.2d 497, 500 [63 Cal.Rptr. 111]; *People* v. *Rascon* (1954) 128 Cal. App.2d 118, 122 [274 P.2d 899]; and *People* v. *Draper* (1945) 69 Cal.App.2d 781, 785-786 [160 P.2d 80].) He asserts

that showing a mere opportunity to commit the crime is not sufficient to sustain a conviction. (*People* v. *Blackwell* (1961) 193 Cal.App.2d 420, 424-425 [14 Cal.Rptr. 224].)

The alleged inconsistencies upon which defendant relies are of a minor nature and to some extent are explained by the testimony. The evidence, among other things, shows that defendant took possession of four suits and carried them into a fitting room from which they disappeared contemporaneously with the departure of defendant from the store. No such facts were adduced in the cases upon which defendant relies. The matter is governed by the following: ''. . . 'The determination of a charge in a criminal case involves proof of two distinct propositions: First, that the offense charged was committed, and second, that it was perpetrated by the person or persons accused thereof. . . . We must assume in favor of the verdict the existence of every fact which the jury could have reasonably deduced from the evidence, and then determine whether such facts are sufficient to support the verdict.' If the circumstances reasonably justify the verdict of the jury, the opinion of the reviewing court that those circumstances might also reasonably be reconciled with the innocence of the defendant will not warrant interference with the determination of the jury. [Citations.]'' (*People* v. *Newland* (1940) 15 Cal.2d 678, 681 [104 P.2d 778].)

*The Conspiracy Count*

 Defendant was charged with violation of section 667, as outlined above, and with conspiracy to commit petty theft. His codefendant was charged only with the conspiracy. (Since no prior conviction was alleged with respect to the codefendant, it may be inferred that the conspiracy charge was used to create superior court jurisdiction over the codefendant so that a joint trial could be held.) Defendant relies on a combination of principles one of which is expressed in *People* v. *Collins, supra,* 242 Cal.App.2d 626, as follows: ''The theory is that, since one person alone cannot be guilty of conspiracy, if all alleged conspirators except one are found to be innocent, the trier of the fact must be consistent and give the other defendant the benefit of the same finding. [Citations.]'' (242 Cal.App.2d at p. 633.) The second proposition is that one cannot be convicted of conspiracy when he is acquitted of every overt act alleged. (*In re Johnston* (1935) 3 Cal.2d 32, 36 [43 P.2d 541]; *Oliver* v. *Superior Court* (1928) 92 Cal. App. 94, 97 [267 P. 764]; and see *People* v. *Robinson* (1954)

43 Cal.2d 132, 138 [271 P.2d 865]; and *People* v. *Gilbert* (1938) 26 Cal.App.2d 1, 22-23 [78 P.2d 770].) Defendant ingeniously asserts that the basic overt act—although only a meeting in the store was alleged—was the theft of the clothing; that the failure to charge the codefendant with theft amounted to the latter's acquittal of that offense; that the codefendant's acquittal of the substantive charge left him innocent of the conspiracy; and that therefore there was no one with whom defendant could conspire.

This house of cards falls down when one removes the ace. There is no principle of law which requires that all alleged conspirators be charged with a substantive crime. Consequently, the failure to charge the codefendant with any offense other than conspiracy cannot be deemed an acquittal of the substantive offense. Here the codefendant was in fact convicted of the conspiracy, but it is possible to have a conspiracy with persons who are not apprehended and tried (*People* v. *Sagehorn* (1956) 140 Cal.App. 2d 138, 146 [294 P.2d 1062]); and the dismissal of charges against alleged coconspirators so they can become prosecution witnesses will not prevent prosecution of another for conspiracy. (*People* v. *Gilbert, supra,* 26 Cal.App.2d 1, 25-26.) Moreover, it is not necessary that the alleged coconspirator participate in all of the overt acts constituting the substantive crime. (See *People* v. *Benenato* (1946) 77 Cal.App.2d 350, 356 [175 P.2d 296] [disapproved on other grounds *In re Wright* (1967) 65 Cal. 2d 650, 654-655 [56 Cal.Rptr. 110, 422 P.2d 998]].) In any event, "where there are overt acts alleged in the conspiracy count in addition to those constituting the substantive offense, there may be a conviction of conspiracy and an acquittal of the substantive offense. Such a conviction and acquittal have been held not to be inconsistent. [Citations.]." (*People* v. *Robinson, supra,* 43 Cal.2d 132, 138.)

The form the prosecution took in this case is governed by the following observation: "Appellant argues that it was unfair to elevate a petty theft to the status of felony by charging conspiracy, even if two persons were involved. The selection of the appropriate offense to be charged is the function of the district attorney." (*People* v. *Ulibarri* (1965) 232 Cal.App.2d 51, 55 [42 Cal.Rptr. 409] [disapproved on other grounds *People* v. *Williams* (1965) 63 Cal.2d 452, 460 [47 Cal.Rptr. 7, 406 P.2d 647]]; and see Gov. Code, §§ 26500-26502.)

*Failure to Receive Evidence*

 The saleslady, the special police officer, the defendant and his codefendant all testified concerning the coat worn by the defendant at the time the suits were taken. Defendant testified that the coat he was wearing was with his effects at the jail. At the conclusion of the testimony of all the witnesses, the following occurred: "[Defendant's Atty.]: That is all I have, Your Honor. I do know, if Your Honor desires, that Mr. Prince's coat which he was arrested with is in his property, and he tells me this was the coat that he had on on both occasions. I don't know if the Court would care to see him with the coat, but I make that offer of proof just for the purpose of demonstration. The Court: Do you have any other evidence [prosecutor]? [Prosecutor]: No, Your Honor. The Court: Is the matter submitted? [Defendant's Atty.]: Yes. The Court: There will be a finding of guilty to the charge."

Defendant now asserts that the court erred in failing to rule upon an offer of proof and that the public defender was remiss in failing to press for a ruling. He concedes, however, that the duty is on the offering party to press for a ruling when the court withholds a decision as to the admissibility of evidence. (*People* v. *Moore* (1954) 43 Cal.2d 517, 523-524 [275 P.2d 485]; *People* v. *Gallegos* (1960) 180 Cal.App.2d 274, 277 [4 Cal.Rptr. 413]: *Spanfelner* v. *Meyer* (1942) 51 Cal.App.2d 390, 392 [124 P.2d 862].) The statements evince a question as to whether the court wanted further evidence, rather than an offer of proof. As noted, there was considerable testimony, without any substantial contradiction concerning the nature of the coat. (See *People* v. *Moore, supra,* at p. 524.) If it was deemed that its production would create an impression of size and bulkiness more favorable to the defendant than that to be derived from the oral testimony, such opinion should have been made known to the trial court. (See Evid. Code, § 354, subd. (a).) On this record it cannot be said that the defendant was prejudiced by any act or omission of the court or of the public defender.

*Double Punishment*

It is conceded that to sentence the defendant for conspiracy to commit petty theft, in violation of section 182, and for the aggravated petty theft in violation of section 667, when the conspiracy had no objective apart from that crime violates the prohibition in section 654 against multiple punishment. (*In re Cruz* (1966) 64 Cal.2d 178, 180-181 [49 Cal.Rptr.

289, 410 P.2d 825]; *People* v. *Birdwell* (1967) 253 Cal.App.
2d 621, 633 [61 Cal.Rptr. 536]; *People* v. *Keller* (1963) 212
Cal.App.2d 210, 220-222 [27 Cal.Rptr. 805].) Since the maximum punishment for the latter (imprisonment for not exceeding five years) is greater than that for conspiracy to commit petty theft (imprisonment for not more than three years), the sentence for the aggravated petty theft should control.

The judgment is reversed insofar as it imposes a sentence for conspiracy, and in all other respects it is affirmed.

Molinari, P. J., and Elkington, J., concurred.