[Crim. No. 12158.    Second Dist., Div. Five.    May 8, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. WILLIE KEESEE, Defendant and Appellant.

Alfred V. Contarino, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Raymond M. Momboisse and August J. Ginocchio, Deputy Attorneys General, for Plaintiff and Respondent.

KAUS, P. J.—Defendant and appellant Willie Keesee and one McLeod were jointly charged and convicted of robbing one Walter Raymond of $1.26. Keesee alone has appealed. Trial was to a jury.

The facts of the case may be briefly summarized as follows: On October 20, 1965, at 9:30 p.m. Raymond was standing in front of a hotel on Wall Street. He was talking to some people. Keesee and McLeod approached the group. Keesee

started to strike him with a chain, demanded and received his wallet.

McLeod's conduct in the matter was peripheral. Raymond said that McLeod "just pushed" and said "shut up." McLeod left with Keesee.

Both defendants were arrested soon afterwards. The chain was found nearby.

Keesee's defense was that Raymond swung at him and he merely swung back. He did not hit Raymond, who ran away. He denied having been in possession of a chain. He took nothing from Raymond.

Two other witnesses, Moore and Landry, corroborated Raymond. The People's case was somewhat weakened by the quality of the three eyewitnesses: both Raymond and Moore had been drinking before the incident in question. Landry, according to a police witness, was drunk at the time. Landry also contradicted the others in some respects. Raymond had fortified himself by two double shots of scotch before taking the witness stand. We mention these facts only to show that the prosecution did not have an open and shut case.

█ The deputy public defender who represented both McLeod and Keesee handled the defense brilliantly and in his final argument made the most of the weaknesses, such as they were, in the People's case. It is most unfortunate that the reason why we must reverse is that certain remarks made by him during the same argument point up an omission which, we feel, deprived Keesee of the effective assistance of counsel. These remarks were made almost inevitable by the deputy's failure to move the trial court for separate representation for his two clients. Thus he put himself in a position where, in order to aid McLeod, he had to and did hurt Keesee.

It is evident from the recital of the facts that the case against Keesee was much the stronger one. The divided loyalties of the deputy led him into making the following remarks while arguing for his client McLeod: ". . . I say that you have a very, very serious further question whether or not Mr. McLeod was involved in a matter that constituted participation in such crime *as might have been committed by another person there. . . . . Now, you could—I certainly don't think you should, but you could go into the jury room and say, 'By gosh, that fellow Keesee is guilty; we are convinced of it* and we are convinced McLeod was there,' and return a verdict of not guilty as to McLeod because the proof has not shown that

McLeod actually aided and abetted in any robbery. . . .''
(Italics added.)

''. . . *The case that is made out, if any is made out, is to Keesee,* not as to McLeod. . . .''

''. . . Nobody has appeared here and said that McLeod took anything off this man, is why I have been telling you *whatever else you think you certainly should acquit McLeod.* . . .'' (Italics added.)

The deputy district attorney was not slow to take advantage of defense counsel. At the beginning of his closing argument he purported to summarize defense counsel's submissions to the jury, partly as follows: ''And his third point was that in any event the People had only shown that Mr. Keesee was guilty of robbery and hadn't shown that Mr. McLeod was guilty of robbery.''

Later on he again referred to defense counsel's argument as follows: ''On his final argument, well, even if the People have shown Mr. Keesee guilty of robbery they haven't shown that Mr. McLeod is guilty.''

On motion for new trial defense counsel, for the first time, brought into the open what should have been evident all along, namely that he should not have represented both defendants. He argued as follows, framing the problem as one of misconduct by the prosecutor: ''But I think that there was at least one event here which may have influenced the jury somewhat improperly, and that is, Mr. Boon in the excitement of argument picked up something I had said in my argument. I had made the point about the lesser evidence against McLeod and Mr. Boon, I think, stated to the jury that in effect I was saying that Keesee was guilty, that I was conceding that Keesee was probably guilty, and I think that if that had been made in his opening argument, somehow then I could have, perhaps, overcome it; but I think this may well have influenced the jury in a way which I couldn't effectively combat. I think that—if I am correct in that—that Mr. Boon sort of took advantage of that portion of my argument and did modify it a little bit in his speech, that this would have to be something which Mr. Boon should not have done. . . .''

There was, of course, nothing that any defense counsel for Keesee could have done to alter the fact that the case against him was much stronger than the one against McLeod. Nor, we suppose, could any attorney representing Keesee alone have prevented McLeod's counsel from doing his job and pointing this out to the jury. Unfortunately it was in the discharge of

his duty toward McLeod that the attorney representing him damned his other client, Keesee.

To hear Keesee's own counsel—now speaking for McLeod—comparing the weakness of the case against McLeod with the strength of the evidence against Keesee shattered any prospect of an acquittal.

Although it is difficult to classify the problem presented by this appeal, one thing is certain: it leaves one thoroughly convinced that a defendant whose attorney has spoken of his case as Keesee's attorney spoke, has not had a fair trial.

The right to separate counsel is, in a proper case, a constitutional demand. (*People* v. *Douglas*, 61 Cal.2d 430, 439 [38 Cal.Rptr. 884, 392 P.2d 964].) While not automatically available in every case where there are two defendants (*People* v. *Odom*, 236 Cal.App.2d 876, 878-879 [46 Cal.Rptr. 453]), one of the factors which gives rise to it is the heavy involvement of one defendant, compared to that of the other. We quote from *People* v. *Donohoe*, 200 Cal.App.2d 17, 28 [19 Cal.Rptr. 454] : ''The positions of the defendants were not the same. . . . Separate counsel for each defendant throughout the proceedings might have employed tactics for the best interest of his defendant, *including a vigorous assault on the remaining defendant,* without having to consider the interest of such other defendant. All weapons in the armory could be used.

''One of the most effective of these weapons is the summation of the defense in oral argument. Although the oral arguments of counsel are not in the record before us, we think that it is a fair assumption that the argument of defense counsel must of necessity have been restricted in its scope and in places restrained in its tone by an ever present concern that his comments on behalf of one defendant did not injure or offend the other. Such a position for counsel necessarily implies the possible relinquishment of points of argument, even though they might have benefited one of the accused. . . .'' (Italics added.)

In *People* v. *Donohoe, supra,* it appears that the attorney who was forced to represent both defendants chose—or was assumed to have chosen—a course directly opposite from that of counsel in this case. Here defense counsel used ''all weapons in the armory'' on behalf of McLeod. One of the weapons turned out to be what was in effect an attack on Keesee.

We recognize the difficult position of the trial court. There

was no request for separate counsel and no conflict of interest was apparent. The problem did not really see the light of day until the closing arguments, although it was inherent in the situation all along. Whether or not the trial judge should have done something on his own motion at that time need not be decided, since the matter was brought to his attention in connection with the motion for new trial. Though it was not as vigorously urged as the situation justified, it was of course the very same attorney who—quite unintentionally, we are sure—had placed himself in the embarrassing position in the first place who argued the motion. It is clear, however, that at that hearing the court had the opportunity and the power to correct the miscarriage of justice which had taken place.

We believe that the present case is one of those rare instances where it is demonstrated on the record that the nature of the defense afforded deprived the defendant of a constitutional right. (*People* v. *Ibarra,* 60 Cal.2d 460 [34 Cal.Rptr. 863, 386 P.2d 487].) True, no complaint was made by the defendant below. In *People* v. *Monk,* 56 Cal.2d 288, 299 [14 Cal.Rptr. 633, 363 P.2d 865] the Supreme Court said: ''Moreover, even if there had been any incompetency on the part of defense counsel, it is questionable whether defendant in the instant case could complain on appeal. A defendant may complain at any time during the trial that his counsel is not adequately representing him thereby affording the trial court an opportunity to correct the situation, but if a defendant fails to avail himself of this privilege at the trial level, he cannot ordinarily after an adverse judgment, first complain of the matter on appeal.''

It is debatable how valid this rule is as a general proposition today. It was questioned in *People* v. *Kirchner,* 233 Cal. App.2d 83, 87 [43 Cal.Rptr. 218], where it was pointed out that in *In re Rose,* 62 Cal.2d 384 [42 Cal.Rptr. 236, 398 P.2d 428] an alternative writ had issued though there was no claim of lack of effective aid of counsel at the trial level: ''The theory that the defendant must object to the representation he is receiving at the trial court level stands in sharp juxtaposition to the theory that counsel at all times has charge and must be the one in charge of the defense (*In re Atchley,* 48 Cal.2d 408 [310 P.2d 15] ; *People* v. *Logan,* 137 Cal.App.2d 331 [290 P.2d 11]) and imputes to the defendant a knowledge of the law that common sense and experience indicate is not justified. (*Gideon* v. *Wainwright,* 372 U.S. 335 [9 L.Ed.2d

799, 83 S.Ct. 792, 93 A.L.R.2d 733].) '' (See also *In re Jones,* 61 Cal.2d 325, 329-330 [38 Cal.Rptr. 509, 392 P.2d 269].)

The judgment is reversed.

Hufstedler, J., and Stephens, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied July 5, 1967.