[Crim. No. 15134. Second Dist., Div. Four. July 28, 1969.]

THE PEOPLE, Plaintiff and Respondent, v. JAMES BENJAMIN BRYANT, Defendant and Appellant.

Richard H. Levin, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Lola M. McAlpin, Deputy Attorney General, for Plaintiff and Respondent.

DUNN, J.—After a joint nonjury trial, appellant and his codefendant, James Davis, were found guilty of burglary, a felony, committed in violation of Penal Code, section 459. The crime was fixed by the court as second degree. The information, as amended, charged appellant with a prior conviction of felony burglary, which was found by the court to be true.[1] After the complaint was filed and municipal court arraignment held, a preliminary examination took place on October 2, 1967, wherein appellant and Davis were both represented by the public defender. The burglary victim under count I,[2] Mrs. Parks, testified she returned to her house in Los Angeles the afternoon of July 17, 1967, to find that $400 cash and a watch had been stolen. Louver panes in a kitchen window were found to have been removed. She called the police. It was stipulated (for purposes of the preliminary examination, only) that a qualified officer went that date to the premises and lifted fingerprints from a louver, photographed the same and compared them with exemplar fingerprints of appellant and Davis and had the opinion they were made by these same men.

The superior court trial was held January 3, 1968. Appellant and Davis again were represented by the public defender. After appropriate discussion, each defendant waived jury trial on all issues and submitted the case to the court on the transcript of the testimony of Mrs. Parks given at the preliminary examination, plus added evidence to be produced at trial. The latter consisted of testimony of two police fingerprint experts who stated the prints found at the Parks' resi-

---

[1] We have sent for and reviewed the superior court file as the transcripts furnished to us seemed incomplete. This reflects that the original judgment and the minutes, each dated 1/3/68, were in conflict, the minutes reciting that the prior conviction was found true, whereas the judgment stated there was "no disposition" of it. However, a "Corrected Judgment" was filed *nunc pro tunc* reciting that the "prior conviction having been found true as alleged . . ." etc.

[2] The complaint and the information set forth three separate counts and alleged: a burglary by appellant, alone, on 6/23/67, the joint burglary on 7/17/67 at the Parks' residence and a burglary by Davis, alone, on 7/27/67. Each burglary was committed in similar fashion and in all three cases appellant and Davis were identified only by fingerprints. They were held to answer on all three counts at the preliminary examination but, after trial, the two counts charging individual burglaries were dismissed and they were found guilty only under count I, the joint burglary.

dence were those of appellant and Davis. The prints were received in evidence. There were no further witnesses for either side; appellant and Davis did not testify.

Appellant raises two points on this appeal.

I. *Were Appellant's Fingerpints Secured In Violation Of His Constitutional Rights?*

At the court trial one fingerprint expert testified that the latent prints obtained at the Parks' residence had been compared with fingerprint cards from *prior* arrests of each defendant and positive identification was made. However, the cards did not show particular areas of the thumb which appeared on the latent prints. As the officer expert believed a comparative demonstration of each area would be desirable for court purposes, he obtained new fingerprint cards dated September 20, 1967, which showed the areas in question.[3]

■ The police were entitled to fingerprint each defendant at the time arrested for the burglary charged, and were not obligated to rely on fingerprint cards obtained from the prior arrests. Accordingly, defendants properly were fingerprinted September 20, 1967.[4]

Appellant argues that his rights to the assistance of counsel (Sixth Amendment, U. S. Const.) and against self-incrimination (Fifth Amendment, U. S. Const.) were violated by taking from him a second set of fingerprints. But his Sixth Amendment point is disposed of by *People* v. *Graves* (1966) 64 Cal.2d 208 [49 Cal.Rptr. 386, 411 P.2d 114] (no right to counsel at the time handwriting exemplars are obtained). *Schaeffer* v. *Municipal Court* (1968) 260 Cal.App.2d 819 [67 Cal.Rptr. 479] (involving the giving of intoxication tests) may also be cited, particularly the footnote on page 822.

Fifth Amendment rights are disposed of by *Gilbert* v. *California* (1967) 388 U.S. 263 [18 L.Ed.2d 1178, 87 S.Ct. 1951] (handwriting exemplar); *Schmerber* v. *California* (1966) 384 U.S. 757, 763-764 [16 L.Ed.2d 908, 915-916, 86 S.Ct. 1826] (blood samples); *People* v. *Ellis* (1966) 65 Cal.2d 529 [55 Cal.Rptr. 385, 421 P.2d 393] (voice identification); *People* v. *Sudduth* (1966) 65 Cal.2d 543 [55 Cal.Rptr. 393, 421 P.2d

[3]The record before us is silent as to the date either defendant was arrested. However, as the complaint filed in the municipal court is dated 9/25/67 it is reasonable to surmise the arrests occurred on or shortly before 9/20/67, when defendants were fingerprinted.

[4]At the trial, counsel on both sides apparently misinterpreted the testimony and argued the point to the court as though the police fingerprinted defendants twice following the burglary arrest, once at the time of booking and again a few days later. The record does not so indicate.

401] (breath samples); *People* v. *Sowers* (1962) 204 Cal.App. 2d 640, 644-645 [22 Cal.Rptr. 401] (fingerprints); and *People* v. *McDaniel* (1958) 157 Cal.App.2d 492, 500 [321 P.2d 497] (fingerprints).[5]

Appellant is heedful of the foregoing but, observing that article I, section 13 of the California Constitution insures to an accused the rights of counsel and against self-incrimination, argues that California courts are free to give broader scope to those rights than is granted to the same rights under the federal Constitution. However, as noted by the court in *Cohen* v. *Superior Court* (1959) 173 Cal.App.2d 61, 66-67 [343 P.2d 286] and *People* v. *Estrada* (1965) 234 Cal.App.2d 136, 145 [44 Cal.Rptr. 165, 11 A.L.R.3d 1307], the pertinent language in the federal Constitution is quite similar to that in our state Constitution, for which reason interpretation of the United States Constitution by federal courts is very persuasive in interpreting our own. We are cited to no basis in precedent or reason for holding that appellant's rights under California Constitution, article I, section 13 were violated and we find none.

II. *Was Appellant's Right To Counsel Violated Because He Was Represented By The Same Attorney Who Represented His Codefendant?*

Appellant contends that, since the public defender represented both him and Davis, his representation was thus ineffective and he thereby was deprived of his constitutional right to counsel. He relies upon *People* v. *Chacon* (1968) 69 Cal.2d 765 [73 Cal.Rptr. 10, 447 P.2d 106]; *People* v. *Gallardo* (1969) 269 Cal.App.2d 86 [74 Cal.Rptr. 572]; *People* v. *Baker* (1968) 268 Cal.App.2d 254 [73 Cal.Rptr. 758]; and *People* v. *Keesee* (1967) 250 Cal.App.2d 794 [58 Cal.Rptr. 780]. Appellant further argues he was never informed by the court of his right to separate counsel and therefore cannot be held to have waived it.

A recital of the historical development of the rule would serve little purpose. As stated in *Chacon, supra,* (pp. 773-774 of 69 Cal.2d): ■ "The right to counsel at trial guaranteed by the Sixth Amendment of the United States Constitution (*Gideon* v. *Wainwright* (1963) 372 U.S. 335 [9 L.Ed.2d 799, 83 S.Ct. 792, 93 A.L.R.2d 733]) and article I,

---

[5]Distinguish *People* v. *Sesslin* (1968) 68 Cal.2d 418 [67 Cal.Rptr. 409, 439 P.2d 321] where handwriting exemplars were obtained as the result of an unlawful arrest and detention.

section 13 of the California Constitution does not include an automatic right to separate counsel for each codefendant. One counsel may represent more than one defendant so long as the representation is effective. (*Powell* v. *Alabama* (1932) 287 U.S. 45, 71 [77 L.Ed. 158, 171-172, 53 S.Ct. 55, 84 A.L.R. 527].) Effective assistance of counsel is assistance 'untrammeled and unimpaired by a court order requiring that one lawyer shall simultaneously represent conflicting interests.' (*Glasser* v. *United States* (1942) 315 U.S. 60, 70 [86 L.Ed. 680, 699, 62 S.Ct. 457]; *People* v. *Douglas* (1964) 61 Cal.2d 430, 437 [38 Cal.Rptr. 884, 392 P.2d 964].) If counsel must represent conflicting interests or is ineffective because of the burdens of representing more than one defendant, the injured defendant has been denied his constitutional right to effective counsel. (*United States* v. *Glasser, supra*; *People* v. *Robinson* (1954) 42 Cal.2d 741, 745-748 [269 P.2d 6]; *People* v. *Lanigan* (1943) 22 Cal.2d 569, 576-577 [140 P.2d 24, 148 A.L.R. 176]; *People* v. *Douglas, supra*; *People* v. *Donohoe* (1962) 200 Cal.App.2d 17, 24 [19 Cal.Rptr. 454].)'' The court went on to find the presence of an actual conflict between defendants at the penalty trial. Furthermore, the record of the guilt trial as interpreted by the court showed ''. . . the facts of the case are fraught with potentially effective individual defenses,'' which separate counsel for Chacon could have developed and argued but a single attorney ''. . . could not make these arguments in favor of each defendant to dissociate him from his codefendants' cases, for he represented them all and had to make common cause for them.'' Having found counsel was rendered ineffective by these conflicting interests, thus creating a right to separate counsel if desired, the Supreme Court went on to conclude that the right to separate counsel had not been waived.

 In the present case, we fail to find, or even suspect, the possibility of any conflict in interest and none is brought to our attention by appellant in his briefs. The facts, as previously recited, are simple. Appellant and Davis were tied to the burglary by leaving their fingerprints there. Either could have attacked the fingerprint experts' identification without affecting the other's defense and each could have denied the prints were his. No inconsistency would be involved. At the trial, counsel expressed no belief to the court that any conflict existed. The case against one defendant was no stronger than against the other. None of the elements of conflict found present in the guilt phase of *Chacon* was present here. Cases

are to be distinguished wherein counsel informed the trial court of a conflict and the appellate court found appellant was deprived of his right to effective counsel by presence of a probable conflict: *People* v. *Douglas* (1964) 61 Cal.2d 430 [38 Cal.Rptr. 884, 392 P.2d 964]; *People* v. *Robinson* (1954) 42 Cal.2d 741 [269 P.2d 6]; *People* v. *Lanigan* (1943) 22 Cal.2d 569 [140 P.2d 24, 148 A.L.R. 176]; *People* v. *Perry* (1966) 242 Cal.App.2d 724 [51 Cal.Rptr. 740]; *People* v. *Donohoe* (1962) 200 Cal.App.2d 17 [19 Cal.Rptr. 454] and *People* v. *Kerfoot* (1960) 184 Cal.App.2d 622 [7 Cal.Rptr. 674]. Also to be distinguished are those cases where both actual and probable conflict were apparent because of the deeper involvement of one defendant. than others: *People* v. *Gallardo, supra,* 269 Cal.App.2d 86; *People* v. *Keesee, supra,* 250 Cal.App.2d 794.

Here, it was appellant who was charged with a prior felony conviction, Davis was not, and no conflict of interests prejudicial to appellant can be found in such fact. If appellant had taken the stand to testify his testimony would be impeachable by proof of the prior conviction, but use of separate counsel for appellant would have done nothing to alter this picture.

Just as the case at hand is readily distinguishable from cases previously cited, it is more closely analagous to: *People* v. *Ingle* (1960) 53 Cal.2d 407 [2 Cal.Rptr. 14, 348 P.2d 577]; *People* v. *Romero* (1969) 272 Cal.App.2d 39 [77 Cal.Rptr. 175]; *People* v. *Fuller* (1969) 268 Cal.App.2d 844 [74 Cal. Rptr. 488]; *People* v. *Hughes* (1969) 268 Cal.App.2d 796 [74 Cal.Rptr. 107]; *People* v. *Prince* (1968) 268 Cal.App.2d 398 [74 Cal.Rptr. 197]; *People* v. *George* (1968) 259 Cal. App.2d 424 [66 Cal.Rptr. 442]; *People* v. *Watkins* (1967) 248 Cal.App.2d 603 [56 Cal.Rptr. 734]; *People* v. *Odom* (1965) 236 Cal.App.2d 876 [46 Cal.Rptr. 453].

Codefendants in a criminal matter, of course, have the right to employ as many separate counsel as they wish. On the other hand, while indigent defendants have the right to have counsel appointed to represent them without charge, they have no right to appointment of separate counsel excepting where an existing or potential conflict of interests would render joint counsel ineffective. If no such situation exists, no right to separate counsel exists. ■ Since no error can be based upon failure to waive a nonexistent right, appellant's contention that he never waived a right to separate counsel is unmeritorious. As noted in *People* v. *George, supra,* 259 Cal. App.2d at pp. 433-434: "Here, as we have indicated above,

there was no conflict of interest and we see no prejudice. It follows that the court's failure to advise defendant of his right to separate counsel was harmless beyond a reasonable doubt.'' (Also see: *People* v. *Prince, supra,* 268 Cal.App.2d at pp. 410-411.)

Citing two decisions of the United States Court of Appeals for the District of Columbia, *Lollar* v. *United States* (D.C.Cir. 1967) 376 F.2d 243 and *Ford* v. *United States* (D.C.Cir. 1967) 379 F.2d 123, it has lately been suggested by a judge of an appellate court that, whenever several defendants are jointly represented by the same lawyer, a necessity exists for the trial judge to make inquiry at the outset of a prosecution to see if any conflict in interest exists or may develop. Without mustering the arguments for or against such suggestion, we note that both cases relied upon and cited a provision of the federal Criminal Justice Act, 18 United States Codes, section 3006A(b), reading in part as follows: ''In every criminal case in which the defendant . . . appears without counsel . . . the court shall advise the defendant that . . . counsel will be appointed to represent him if he is financially unable to obtain counsel. . . . The . . . court shall appoint separate counsel for defendants who have such conflicting interests that they cannot properly be represented by the same counsel. . . .'' Though California has no such court rule or code provision, a dissenting justice in a recent case (*People* v. *Morga* (1969) 273 Cal.App.2d 200 [78 Cal. Rptr. 120], has gone one step further and suggested to our Supreme Court that it adopt a rule requiring automatic appointment of separate counsel at the outset for indigent accused whenever they are jointly charged with a crime. Whatever may be the merits of these proposals, however, no one has yet suggested that prejudice may be found in failure to advise an accused of a nonexistent right. As heretofore noted, we have found no error in the failure of the trial court to appoint separate counsel for appellant.

 We now come to the final point, *i.e.*: that a conflict emerged during arraignment for sentencing. On this phase of the case we note what, on the surface, is a conflict.[6] The trial

---

[6] ''Mr. Maple [Deputy Public Defender]: Well, if your Honor pleases, in connection with Mr. Bryant, he has heretofore been sentenced to State Prison for the term prescribed by law in a similar kind of burglary situation, and I would ask that the Court follow the same kind of sentencing structure, and hopefully run the matters concurrent.

''As to Mr. Davis, the Probation Officer in Mr. Davis' case felt that State Prison was not appropriate, but that the defendant also would not

court denied probation to appellant and sentenced him to state prison, his sentence to run concurrently with his sentence for another crime of which he had been convicted. Codefendant Davis was denied probation but was sentenced only to county jail, such to run concurrently with another county jail sentence imposed for involvement with appellant in the same earlier prosecution. In *Chacon* it is said (*supra,* 69 Cal.2d at p. 775): "Conflicts of interest necessarily exist when the jury must fix the penalty for more than one defendant. Often the strongest argument that separate counsel can make on the issue of penalty is that his client was less culpable than the others and that he, at least, should not be executed. In addition, he must be free to stress particular mitigating elements in his client's background or other individual mitigating factors that may not apply to a codefendant. Counsel representing more than one defendant is necessarily inhibited in making such arguments and in presenting evidence to support them. He cannot simultaneously argue with any semblance of effectiveness that each defendant is most deserving of the lesser penalty."

It should be noted that the right guaranteed by the Constitution is to have counsel and, by interpretation, counsel that is "effective." The fact that a conflict of interests exists at the outset, or later develops or appears is of little significance unless the conflict is of such nature and degree as to make joint legal representation ineffective.

As a matter of ethics, no lawyer may represent conflicting interests and lawyers must be ever aware of this adjuration.

---

benefit from any Youth Authority program, and that probation was really not a sensible kind of disposition. So I would ask the Court to sentence Mr. Davis to a local sentence, running it concurrently.

"I believe there were, as to both defendants, a series of transactions more or less related in kind, and more or less participated in by both individuals, and I think that the record as to both is fairly adequately set forth in each of the probation reports.

"THE COURT: These apparently were—that is, the burglary in the case before the Court at the present time was committed around the same time as the burglary referred to in the case on which the defendants have already been sentenced.

"MR. MAPLE: That would appear to be so.

"THE COURT: I do notice that Mr. Davis had been committed to the Youth Authority. He was discharged from the Youth Authority in May of this year. Almost immediately he gets into further difficulties and he is convicted of violation of Section 10851 of the Vehicle Code in which he received a sentence of nine months in the County Jail. That didn't seem to benefit the defendant either, and he continued on the same path.

"MR. MAPLE: Without meaning to disparage Mr. Bryant, I think Mr. Davis' involvement here perhaps in some respects is due to his association."

224

However, such restriction is not absolute and, by consent, a lawyer properly may represent conflicting interests.[7] The organized bar thus recognizes circumstances often will exist where the presence of conflicting interests does not so shackle a lawyer as to render him professionally ineffective in representing joint clients. In a criminal case one calls to mind many instances wherein joint defendants, though with some conflict in interests, are better served by a single attorney than by separate counsel. All too frequently, overzealous counsel for separate defendants attack the memory or credibility of a codefendant in the mistaken belief they thus better serve their own client. In effect, such defense lawyer becomes a prosecutor. A legal dogfight results in which neither defendant is helped and the prosecution is greatly aided.

Frequently, too, a conflict is more apparent than real. It is certainly common for a single defense counsel to represent several defendants having no conflicting interests, but who, because of past involvement with the law, are unlikely to receive identical sentences for the same crime. To hold that any significant conflict of interests exists under such circumstances is to be blind to the facts. Thus, in determining whether or not single counsel for joint defendants is rendered ineffective by conflicting interests one must examine the nature and extent of such conflict. ▌ Where a truly significant conflict of interests exists the effectiveness of counsel may be destroyed thereby and appellate courts will not make inquiry to see if prejudice resulted as the deprivation of effective counsel is of sufficient constitutional significance to merit reversal, even without actual prejudice. But where the conflict in interests is not momentous, we must look to the record to determine what part it played, if any, in restricting counsel.

The present case is quite unlike *Chacon*. In that case defendants were four life-term prisoners accused of stabbing a fifth prisoner. The defense claimed two of the accused (Myers and Noah) acted in self-defense, a third (Chacon) merely tried to break up the fight and did not stab the victim, and the fourth (Garcia) likewise stabbed no one. Chacon and two others pleaded not guilty and not guilty by reason of insanity. Trial counsel's cross-examination of prosecution witnesses was limited by the fact such might develop a

[7] "A member of the State Bar shall not represent conflicting interests, except with the consent of all parties concerned." Rule 7, Rules of Professional Conduct of the State Bar of California.

defense for one client at the expense of another. His freedom of argument to the jury was similarly hampered.

In the case at bar, no such conflicts existed during the trial. The fact appellant had a prior felony conviction raised no conflict at the time of sentencing. Another court just recently had sentenced appellant to state prison for still another burglary. For trial counsel to urge imposition of a county jail sentence in the present case would therefore have accomplished nothing. In recognition of that fact, trial counsel suggested to the court that any prison sentence be set to run concurrently and such was imposed. His suggestion to the court, that the codefendant's involvement might in part stem from his association, looked toward securing a county jail sentence for the codefendant rather than causing any change for the worse in appellant's sentencing. *Chacon* does not stand for the proposition that the existence between criminals of any distinction for the purposes of sentencing raises a conflict of such significance that separate counsel must be appointed to handle the trial which precedes it. In *Chacon* a separate trial was required to fix the penalty at death or life imprisonment; no such separate trial was here required. We conclude that any conflict of interests between appellant and his codefendant was of small moment and separate counsel for them was not required. No constitutional right was violated.

Judgment affirmed.

Files, P. J., and Kingsley, J., concurred.