604 P.2d 731

Raymond Allen ROLES,
Petitioner-Appellant,

v.

STATE of Idaho, Respondent.

No. 12989.

Supreme Court of Idaho.

Dec. 18, 1979.

Alan E. Trimming, Boise, for petitioner-appellant.

David H. Leroy, Atty. Gen., Lynn E. Thomas, Eugene A. Ritti, Deputy Attys. Gen., Boise, for respondent.

Before SHEPARD, BAKES and BIST-LINE, JJ., MAYNARD and HARGRAVES, JJ. Pro Tem.

PER CURIAM:

The petitioner appellant Raymond Allen Roles filed a petition for post conviction relief after a judgment of conviction on a felony charge of receiving stolen property. In a subsequent prosecution, this conviction was used to establish persistent violation status on petitioner appellant.

In the challenged conviction a co-defendant, Marineau, was charged with burglary. Both defendants were represented by the same court-appointed attorney. Roles contended in his petition for post conviction relief that he was denied the effective assistance of counsel, as guaranteed by the sixth amendment to the United States Constitution, as a result of the trial court's appointment of a single attorney for both himself and his co-defendant.

The record in this case indicates that Roles and his co-defendant were charged in a criminal information in July, 1973. On August 21, 1973, Roles' co-defendant entered a plea of guilty to the burglary charge. On the same date Roles attempted to plead guilty to the charge of receiving stolen property. However, the trial court was not satisfied that Roles sufficiently understood the nature of the charge to which he was pleading, declined to accept the proffered guilty plea, and entered a plea of not guilty. A trial date was set for January 7, 1974. On September 11, 1973, Roles' co-defendant was sentenced to probation for his burglary conviction.

On January 7, 1974, Roles once again sought to plead guilty, and his plea was then accepted. Upon questioning by the court following Roles' offer to plead guilty, the defendant stated that he believed he was fairly and adequately represented by his attorney, that he had discussed the charge, his defenses, and the guilty plea and its consequences with his attorney. Upon questioning by the court, Roles stated that he understood that his guilty plea constituted a waiver of jury trial, the right to confront witnesses against him, and the privilege against self incrimination. The question that a possible conflict of interest was faced by Roles' counsel as a result of the attorney's representing both Roles and the co-defendant was not raised by the trial court, by Roles, or by his attorney prior to Roles' petitioning for post conviction relief from the judgment of conviction in September, 1977.

A single court appointed attorney cannot represent conflicting interests of multiple defendants charged with the same crime. *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *State v. Oldham*, 92 Idaho 124, 438 P.2d 275 (1968). The Supreme Court of the United States recently held that a criminal conviction is subject to reversal where the trial court improperly required joint representation over timely objection of the defendant. *Holloway v. Arkansas*, 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978). The court in *Holloway*, however, stated that "[r]equiring or permitting a single attorney to represent

codefendants, often referred to as joint representation, is not *per se* violative of constitutional guarantees of effective assistance of counsel." 435 U.S. at 482, 98 S.Ct. at 1178, 55 L.Ed.2d at 433.

In *Holloway* the trial court persisted in requiring the public defender to represent three co-defendants despite the counsel's objection that a multiple defense confronted him with conflicting interests, making it impossible for him to provide effective assistance for each client at trial. The defense counsel in *Holloway* moved prior to trial for appointment of separate counsel "on the grounds that one or two of the defendants may testify and if they do, then I will not be able to cross examine them because I have received confidential information from them." The Supreme Court reversed the judgment of conviction, holding that where the defense counsel properly raised the problem of a conflict of interest, the trial court erred in failing to make inquiry to determine whether the appointment of separate counsel was necessary in the case to assure that the defendants received adequate representation.

█ Defendant Roles asserts here that because it was likely that his co-defendant would testify against him at trial if he pleaded not guilty to the charges against him, there was a conflict of interest between Roles and his co-defendant, making the joint representation of the two co-defendants a basis for reversal of Roles' conviction. However, while an actual conflict of interest might have occurred if Roles had proceeded to trial with his original court appointed counsel, his guilty plea prevented that conflict from ever materializing. Joint representation of co-defendants does not of itself constitute denial of a criminal defendant's right to effective counsel. *Holloway v. Arkansas, supra.*

The trial court found, in denying Roles post conviction relief, that Roles' plea of guilty made on January 7, 1974, was knowingly and voluntarily made and that Roles understood the consequences of the plea. As a result, the court found that the plea was valid. *State v. Colyer,* 98 Idaho 32, 557 P.2d 626 (1976); *State v. Monneyham,* 96 Idaho 145, 525 P.2d 340 (1974); I.C.R. 11. There was no showing that Roles' trial counsel recommended a guilty plea to the charge in order to avoid a conflict of interest problem which would have been presented had Roles proceeded to trial and the state called Roles' co-defendant as a witness in its case in chief. Absent a showing that there was at least a possible conflict of interest between the co-defendants at the time the joint representation existed which may have inhibited the attorney's ability to act for the best interests of each co-defendant at all times during that representation, there is no basis for the defendant's claim that his sixth amendment right to effective counsel was abridged. Under the circumstances of this case, defendant Roles has not shown that his trial counsel faced a conflict of interest as a result of his joint representation of the two co-defendants.[1]

Affirmed.

1. Both counsel and the trial court must be sensitive to the problems presented by joint representation of co-defendants and take an active role to assure that the joint representation does not deprive a defendant of his or her constitutional right to effective counsel. The American Bar Association Standards Relating to the Administration of Criminal Justice place responsibility on both the trial court and counsel to assure that a defendant's right to counsel is not impaired by a conflict of interest.

The ABA Standards Relating to the Defense Function, § 3.5(b) (Approved Draft, 1971), provides as follows:

"Except for preliminary matters such as initial hearings or applications for bail, a lawyer or lawyers who are associated in practice should not undertake to defend more than one defendant in the same criminal case if the duty to one of the defendants may conflict with the duty to another. The potential for conflict of interest in representing multiple defendants is so grave that ordinarily a lawyer should decline to act for more than one of several co-defendants except in unusual situations when, after careful investigation, it is clear that no conflict is likely to develop and when the several defendants give an informed consent to such multiple representation. In some instances, as defined in the Code of Professional Responsibility, accepting or continuing employment by more than one defendant in the same

**720**

BISTLINE, Justice, dissenting.

It is true that Roles pleaded guilty and equally true that in the post-conviction proceedings the trial court found that the plea was knowingly and voluntarily made. But, does it necessarily follow therefrom that there was not at times pertinent a conflict arising out of the dual representation? Roles asserts that his guilty plea was induced by the fact that Marineau, charged on the same information with Roles, was pleading guilty and would testify against him. The Court's opinion sees only a *potential* conflict of interest, which failed to materialize when Roles entered his guilty plea, and emphasizes that there was "no showing that Roles' trial counsel recommended a guilty plea to the charge in order to avoid a conflict of interest problem . . . ." Such reasoning is faulty and begs the very question presented. Obviously trial counsel wouldn't do such a thing, and it has not been suggested at all. Trial counsel did have to advise two clients whose interests were not the same. It is not reasonable to believe that trial counsel could, in justice to both clients, encourage or advise one to plead guilty and testify—for whatever benefit might flow from so doing—without realizing the probability that the other's case might thereby be prejudiced. The commentary to § 3.5(b) of the A.B.A. Standards for Criminal Justice explains:

> " * * * In many instances a given course of action may be advantageous to one of the defendants but not necessarily to the other. The prosecutor may be inclined to accept a guilty plea from one of the co-defendants, either to a lesser offense or with a lesser penalty or other considerations; but this might harm the interests of the other defendant. The contrast in the dispositions of their cases may have a harmful impact on the remaining defendant; the one who pleads

guilty might even, as part of the plea agreement, consent to testify against the co-defendant. Moreover, the very fact of multiple representation makes it impossible to assure the accused that his statements to the lawyer are given in full confidence. Defense counsel necessarily must confront each with any conflicting statements made by the other in the course of planning the defense of the cases. In this situation he may find that he must 'judge' his clients to determine which is telling the truth, and his role as advocate would inevitably be undermined as to one if not both defendants."

ABA, Standards Relating to the Defense Function (Approved Draft, 1971), at 213–214.

As Roles points out, had the case gone to trial, trial counsel in defending Roles would have been obligated to attempt to discredit Marineau.

Important here, too, is the fact that Roles and Marineau did not independently retain the same attorney; the situation arose out of a court appointment. Roles cannot be faulted for not knowing at the time that he was thus being cast in a difficult position, and which might not be at all for his own good.

The judgment of conviction should be set aside and Roles allowed to withdraw his plea of guilty, and stand trial on the charge against him. Doing so imposes but a small burden on the State and secures to Roles his constitutional rights.

I dissent also by reason of the Court's failure to set down positive guidelines, noting that the State as well as the defendant has requested that we do so. The Court does call attention to the applicable standards of the American Bar Association, which place responsibility on both the trial court and counsel to assure that a defendant's constitutional right to effective assist-

criminal case will constitute unprofessional conduct."
The ABA Standards Relating to the Function of the Trial Judge, § 3.4(b) (Approved Draft, 1972), provides:
"Whenever two or more defendants who have been jointly charged, or whose cases

have been consolidated, are represented by the same attorney, the trial judge should inquire into potential conflicts which may jeopardize the right of each defendant to the fidelity of his counsel."

ance of counsel is not impaired by dual representation, but does so in a wholly gratuitous manner. Recently the Minnesota Supreme Court, in hearing a similar challenge to joint representation of co-defendants by the same attorney, felt compelled "to announce the adoption of procedures to limit its abuses." *State v. Olsen,* 258 N.W.2d 898 (Minn.1977). That court, too, mentioned the A.B.A. standards after noting that five years earlier it had only gone so far as to indicate "strong disapproval of dual representations." *Id.* at 904. That court went on to explain its reasoning and declare the safeguards:

"The inherent difficulty which faces any attorney who undertakes the joint representation of codefendants is that he or she must simultaneously balance the interests of each defendant against each other. Not only must the attorney of codefendants defend against the prosecution, but he or she must also defend against conflicts between the defendants themselves. As aptly explained by one commentator:

" 'The interests and defenses of co-defendants are, as a general rule, antagonistic; and, given the fact of joint representation, a strong likelihood arises that a conflict exists or will ensue. The inherent difficulty in such a situation is that a single attorney must simultaneously steer the defenses of each defendant on proper course thereby wasting much of his valuable courtroom concentration on the task of preventing scrapes and collisions between multi-client interests. He can no longer freely decide what will be most advantageous for the defense of one client without first weighing against it the disadvantages that might consequently accrue to the other. He must, in short, temper his strategy to a middle-of-the-road position. This condition, of course, imposes an artificial and strained approach on a singular counsel which prevents him from developing a full, aggressive defensive strategy. The shattering impact of skilled technique which ordinarily could be leveled

in full force against the opposition must be partially, and often substantially, diffused in a constant concern to calculate the possible harm each maneuver might work on the co-defendant. Counsel must pick, choose, compromise and forego various attacks because of the threat of adverse repercussions to the interests of the co-defendant. He is thereby prevented from the use of all the weapons in his legal armory.' Note, 23 Ark.L.Rev. 250, 254.

"Thus, on occasion the joint representation of codefendants has added to the defense of a criminal charge the additional burden of the possibility of inconsistent pleas,[6] [See *Commonwealth v. White,* 214 Pa.Super. 264, 252 A.2d 204 (1969) (one codefendant denied all charges while two others pled not guilty to several charges).] factually inconsistent alibis,[7] [See *People v. Bopp,* 279 Ill. 184, 116 N.E. 679 (1917) (one alibi might disprove other).] conflicts in testimony,[8] [See, *Sawyer v. Brough,* 358 F.2d 70 (4 Cir. 1966) (one codefendant denied guilt and accused other codefendant of crime). But see, e. g., *State ex rel. Knott v. Tahash,* 281 Minn. 305, 161 N.W.2d 617 (1968) (both defendants adopted same version of crime without implicating one another); *State v. Robinson,* 271 Minn. 477, 136 N.W.2d 401, certiorari denied, 382 U.S. 948, 86 S.Ct. 410, 15 L.Ed.2d 356 (1965) (both defendants attributed crime to third person).] differences in degree of involvement in the crime,[9] [See *People v. Keesee,* 250 Cal.App.2d 794, 58 Cal.Rptr. 780 (1967) (defense counsel compared strength of case against each defendant). But see, *State ex rel. Knott v. Tahash, supra* (isolated statement by counsel to the effect that involvement of one codefendant was not as extreme or as serious as that of the other codefendant because of the other codefendant's previous record).] tactical admission of evidence,[10] [See, *State v. Tapia,* 75 N.M. 757, 411 P.2d 234 (1966) (statement by codefendant).] the calling and crossexamination and impeachment of witnesses,[11] [See,

*Lollar v. United States,* 126 U.S.App.D.C. 200, 376 F.2d 243 (1967) (summoning of codefendant to testify). See, also, *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968) (use at a joint trial of a confession made by one of defendants held to violate the confrontation rights of implicated defendant because he could not cross-examine the codefendant not testifying).] or strategy in final summation.[12] [See, *People v. Keesee, supra* (defense attorney called evidence against one codefendant stronger than against the other codefendant).] See, generally, Pirsig & Kirwin, Professional Responsibility (3 ed.) pp. 386 to 389; Annotation, 34 A.L.R.3d 470. In addition, courts have alluded to such intangible factors as the added possibility of guilt by association.[13] [See, *People v. Prince,* 268 Cal.App.2d 398, 74 Cal.Rptr. 197 (1968) (codefendant acknowledged his prior felony conviction); *People v. Perry,* 242 Cal.App.2d 724, 51 Cal.Rptr. 740 (1966) (general guilt by association).]

"We must express again our disapproval of joint representation and again stress the attendant dangers it adds to effective representation by counsel. At the same time, we recognize that the effective representation by counsel, though a constitutional right may be waived. *Glasser v. United States,* 315 U.S. 60, 70, 62 S.Ct. 457, 465, 86 L.Ed. 680, 699; *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). Waiver requires the 'intentional relinquishment or abandonment of a known right.' *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461, 1466 (1938). That is, valid waivers not only must be voluntary, but also must be 'knowing intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences.' *Brady v. United States,* 397 U.S. 742, 748, 90 S.Ct. 1463, 1469, 25 L.Ed.2d 747, 756 (1970). However, as noted by the Court of Appeals for the District of Columbia Circuit in *Campbell v. United States,* 122 App.D.C. 143, 144, 352 F.2d 359, 360 (1965):

"' * * * An individual defendant is rarely sophisticated enough to evaluate the potential conflicts, and when two defendants appeal with a single attorney it cannot be determined, absent inquiry by the trial judge, whether the attorney has made such an appraisal or has advised his clients of the risks. * * * We must indulge every reasonable presumption against the waiver of the unimpaired assistance of counsel. *Glasser v. United States* * * *.'

"Thus, courts are recognizing the desirability of requiring the trial court to act affirmatively to ascertain whether multiple defendants represented by a single counsel are cognizant of the risks of conflicts of interests and whether, in light of those risks, they still wish to maintain their common representation. See *United States v. Garcia,* 517 F.2d 272, 275 (5th Cir. 1975); *United States ex rel. Hart v. Davenport,* 478 F.2d 203, 211 (3rd Cir. 1973); *United States v. Foster,* 469 F.2d 1, 5 (1st Cir. 1972); *Lollar v. United States,* 126 [U.S.] App.D.C. 200, 202, 376 F.2d 243, 245 (1967); *Campbell v. United States,* 122 [U.S.] App.D.C. 143, 144, 352 F.2d 359, 360; *Wall v. State,* 214 So.2d 384, 385 (Fla.Dist.Ct.App.1968) ('[I]t would be sound practice for the trial judge to give a *Miranda*-like warning about the possibility that inconsistent defenses, evidence or trial tactics might prejudice defendants jointly represented * * *.'). But see, *United States v. Mandell,* 525 F.2d 671, 677 (7 Cir. 1975), certiorari denied, 423 U.S. 1049, 96 S.Ct. 774, 46 L.Ed.2d 637 (1976) (primary responsibility must lie with attorney).

"The most definitive approach has been taken by the Court of Appeals for the Fifth Circuit in *United States v. Garcia, supra,* which, in analogizing a defendant's waiver of his attorney's possible conflict of interest to the procedural requirements attendant to a defendant's plea of guilty, stated:

"' * * * the * * * court should address each defendant personally and forthrightly advise him of the potential dangers of representation by

counsel with a conflict of interest. The defendant must be at liberty to question the * * * court as to the nature and consequences of his legal representation. Most significantly, the court should seek to elicit a narrative response from each defendant that he has been advised of his right to effective representation, that he understands the details of his attorney's possible conflict of interest and the potential perils of such a conflict, that he has discussed the matter with his attorney or if he wishes with outside counsel, and that he voluntarily waives his Sixth Amendment protections. * * It is, of course, vital that the waiver be established by "clear, unequivocal, and unambiguous language." * * * Mere assent in response to a series of questions from the bench may in some circumstances constitute an adequate waiver, but the court should nonetheless endeavor to have each defendant personally articulate in detail his intent to forego this significant constitutional protection. Recordation of the waiver colloquy between defendant and judge will also serve the government's interest by assisting in shielding any potential conviction from collateral attack, either on Sixth Amendment grounds or on a Fifth or Fourteenth Amendment "fundamental fairness" basis.'

"We believe the adoption of such a procedure in this state would safeguard the rights of defendants under both the Federal and state constitutions and also serve as a means of promoting effective judicial administration by providing a meaningful and independent basis upon which the trial or appellate court may make an independent assessment of the voluntariness of the waiver of such a right. Therefore, we would require the use of such a procedure for trials commencing after the publication date of this opinion. The defendant must voluntarily and with full knowledge of the consequences decide on dual representation. The court should address each defendant personally and advise him of the potential danger of dual representation. The defendant should have an opportunity and be at liberty to question the trial court on the nature and consequences of dual representation and the entire procedure should be placed on the record for review. When satisfactory inquiry does not appear on the record, the burden shifts to the state to demonstrate beyond a reasonable doubt that a prejudicial conflict of interests did not exist. See, *Lollar v. United States*, 126 [U.S.] App.D.C. 200, 376 F.2d 243 (1967).

"The trial court is reversed and the case remanded for a new trial."

*State v. Olsen*, 258 N.W.2d 898, 904–908 (Minn.1977) (some footnotes omitted, others inserted in text).

The procedures directed by the Minnesota court are sound, and I can see no reason for hesitancy on the part of this Court to follow suit.