Filed 1/21/14  P. v. Adams CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D063005 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCN236630-3) |
| TYLER ADAMS, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, K. Michael Kirkman, Judge.  Affirmed.

Kurt David Hermansen, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Peter Quon, Jr., and Randall D. Einhorn, Deputy Attorneys General, for Plaintiff and Respondent.

In an amended complaint filed in July 2009, Tyler Adams and three others were charged with numerous counts of theft and financial fraud. During the next two and one-half years, Adams obtained multiple delays of his trial because he filed a repeated series of *Marsden*[1] and *Faretta*[2] motions that created a revolving door of appointed counsel, retained counsel, and self-representation. In addition, three other delays occurred when Adams's behavior compelled the court to suspend proceedings to allow psychological exams of him under Penal Code[3] section 1368.

In the final round of representational shuffling, Adams's retained counsel asked to be relieved because Adams had defaulted on his agreement to hire essential financial experts. The court relieved retained counsel and reappointed the alternate public defender, who subsequently moved for a four-month continuance. When Adams objected and declined to waive time for trial, the court found good cause to grant the continuance over Adams's objection. However, Adams then asked to be allowed to represent himself to preserve the existing trial date and, after conducting a *Faretta* hearing, the court granted his request to represent himself. Several weeks later, Adams pleaded guilty to all of the charged counts and associated allegations. The court sentenced him to 14 years in prison.

---

[1] *People v. Marsden* (1970) 2 Cal.3d 118.

[2] *Faretta v. California* (1975) 422 U.S. 806.

[3] All further statutory references are to the Penal Code unless otherwise specified.

On appeal, Adams claims he was coerced into waiving his right to be represented by counsel by the court's erroneous rulings, and therefore his waiver of counsel was involuntary. He claims the court erroneously refused to compel his retained counsel to continue representing him, and then erroneously refused to compel the newly reappointed alternate public defender to proceed to trial less than eight weeks after being appointed, which forced Adams into choosing between waiving his speedy trial rights (to preserve his right to counsel) or waiving his right to counsel (to preserve his speedy trial rights). We find no error, and affirm the judgment.

I

PROCEDURAL HISTORY

A. The First Two Years

In 2009 Adams (along with three others) was charged, in a multi-count complaint, with committing numerous thefts and financial frauds. He initially requested self-representation, which was granted. One month later, the revolving door of changing representation and attendant continuances began when he sought and obtained appointed counsel. Three months later, he again moved for and obtained an order allowing him to represent himself, but two months thereafter he again moved for appointment of counsel, which was granted.

In September 2010, the trial court (noting it appeared Adams might be intentionally declining to act responsively) found it necessary to suspend proceedings to permit a psychological evaluation of Adams under section 1368. After reviewing the doctor's report, the court found Adams was competent for trial. In November 2010, his

3

appointed counsel moved to continue the preliminary hearing. When Adams refused to respond to the court's inquiry whether he would waive time for the preliminary hearing, the court deemed his nonresponse to be an objection and granted the continuance over his objection. Two months later, the court again suspended proceedings to permit a psychological evaluation of Adams under section 1368, but characterized his behavior as "suspicious" and "dubious." However, after reviewing the doctor's report, the court again found Adams was competent for trial.

In April 2011, Adams's appointed counsel again asked for a continuance of the preliminary hearing. Adams requested and obtained a *Marsden* hearing at which the court heard and rejected his request for new appointed counsel. Adams then asked to represent himself to preserve the scheduled preliminary hearing date but, after the court reminded him of the danger of self-representation, withdrew his request. In June 2011 the prosecution filed an amended complaint alleging 48 counts sounding in theft and financial fraud (along with associated allegations of the taking of property exceeding specified amounts) and, after a three-day preliminary hearing, Adams was bound over for trial on all counts.

In August 2011 Adams retained private counsel to substitute for the appointed counsel and agreed to a February 2012 trial date and to waive speedy trial rights. However, in December 2011 the court again suspended proceedings to permit a psychological evaluation of Adams under section 1368 after Adams reportedly attempted suicide. After reviewing the doctor's report, the court again found Adams was competent for trial, and continued the trial date to March 15, 2012. The trial was subsequently

4

continued to July 24, 2012, and then again to October 16, 2012, with time waivers by Adams.

B. The Alleged Errors

On August 22, 2012, Adams's retained counsel asked to be relieved because Adams had agreed to provide, but had not yet provided, funds for counsel to hire forensic financial experts, which counsel indicated were necessary because of the complexity of the case. Although Adams had provided counsel with a phone number of the person who would provide funds for that purpose, counsel's calls to that phone number produced no response. Counsel stated he could not effectively represent Adams without those experts, and therefore asked to be relieved as counsel. The court granted retained counsel's motion to withdraw and appointed new counsel for Adams. Adams then claimed "[w]e just had funds allocated yesterday for [the experts and] will have it to him very shortly," which Adams claimed was being provided by one of his business associates. The court informed Adams that (1) his retained counsel would be relieved, (2) the October 16 trial date would be maintained, and (3) the matter was set for confirmation of appointed counsel for August 28, 2012. However, the court assured Adams that if in fact (as Adams claimed) he could arrange for funds to hire the witnesses, and could do so not later than August 27 as Adams represented he would, the court would revisit the issue on August 28. If, however, Adams could not come up with the necessary money, the alternate public defender would take over the case. At the August 28 hearing, appointed counsel was confirmed and the October 16 trial date was confirmed. On appeal, Adams claims that it was error to grant retained counsel's motion to withdraw.

5

At the September 12, 2012, readiness conference, Mr. Reichert (the newly appointed counsel from the alternate public defender's office) explained that because of the complexity of the case, involving over 40 counts, between 20,000 and 30,000 pages of discovery, perhaps 50 witnesses, and the necessity of locating viable expert witnesses, a continuance of the October 16 trial date would be necessary. However, Reichert explained Adams wanted to proceed with the October 16 trial date. The court observed that because of the complexities of the case and the number of counts, "[a]ny attorney would require a significant period of time to come up to speed," and asked whether Adams wanted to reconsider whether or not to waive time. Adams reiterated he did not want to waive the existing trial date. Reichert indicated it would be "impossible for me to be ready" for an October 16 trial date and asked (considering his other commitments) for a four-month continuance of the trial date. The court found the additional time required for Reichert to prepare for trial constituted good cause to grant a continuance, and then turned to "determin[ing] a viable trial date." The court concluded, considering the complexity of the case and counsel's other commitments, the matter should be continued for trial until February 6, 2013. On appeal, Adams asserts the court erred by granting a trial continuance to Reichert over Adams's objection.

After the court stated it would grant Reichert's requested continuance, Adams responded that he would "rather go [pro. per.] and maintain the October 16 date." Reichert stated Adams was "making a mistake by doing this" and asked for time to confer with Adams over the lunch hour, and the court continued the hearing until the late afternoon. At the resumption of the hearing that afternoon, Reichert stated he had

6

advised Adams about the difficulties of self-representation but Adams nevertheless wished to proceed in pro. per. After the court also cautioned him against self-representation, Adams reiterated his desire to represent himself, the court conducted a *Faretta* hearing, found Adams knowingly and voluntarily waived his right to counsel and granted his *Faretta* motion. On appeal, Adams asserts he did not voluntarily waive his right to counsel but was forced to waive counsel because the twin errors--relieving retained counsel and granting a continuance to appointed counsel--compelled him to represent himself as a condition to preserving his speedy trial rights.

II

ANALYSIS

A. The Order Permitting Retained Counsel to Withdraw Was Not an Abuse of Discretion

Adams asserts the order granting retained counsel's motion to withdraw was erroneous because the court could have obviated counsel's grounds for withdrawal by ordering the appointment of experts at government expense under Evidence Code sections 730 and 731.

*Applicable Principles*

A trial court has the authority under Code of Civil Procedure section 284 to permit a retained attorney to withdraw as counsel.[4] "The determination whether to grant or deny

_____

4    Code of Civil Procedure section 284 provides: "The attorney in an action or special proceeding may be changed at any time before or after judgment or final determination, as follows: [¶] 1. Upon the consent of both client and attorney, filed with

7

an attorney's motion to withdraw as counsel of record lies within the sound discretion of the trial court, having in mind whether such withdrawal might work an injustice in the handling of the case. [Citation.] 'It is generally recognized that the failure or refusal of a client to pay or secure the proper fees or expenses of the attorney after being reasonably requested to do so will furnish grounds for the attorney to withdraw from the case.' [(*People v. Prince* (1968) 268 Cal.App.2d 398, 406.)]" (*Lempert v. Superior Court* (2003) 112 Cal.App.4th 1161, 1173.) An order granting a retained attorney's motion to withdraw is reviewed for an abuse of discretion and, when no abuse of that discretion has been demonstrated, any alleged prejudice to the right of the defendant to effective representation by counsel must be found in the subsequent acts or omissions of the court in furnishing the defendant with new counsel. (*Prince,* at p. 407.)

*Analysis*

Adams asserts the court should not have granted retained counsel's motion to withdraw but instead should have sua sponte ordered the appointment of experts, at government expense under Evidence Code sections 730 and 731, which would have eliminated the stated basis for retained counsel's motion to withdraw. The court in *People v Stuckey* (2009) 175 Cal.App.4th 898 stated, in dicta, that a court may order the appointment of experts at public expense even when a defendant has privately retained counsel. (*Id*. at p. 908.) However, there is no authority for the proposition that a court

the clerk, or entered upon the minutes; [¶] 2. Upon the order of the court, upon the application of either client or attorney, after notice from one to the other." Code of Civil Procedure section 284 is a general statute that governs the withdrawal or substitution of counsel in both civil and criminal cases. (*In re Haro* (1969) 71 Cal.2d 1021, 1029.)

8

has a *sua sponte* obligation to invoke Evidence Code sections 730 and 731 on a defendant's behalf. Second, even if the proceedings could be transmogrified into a motion for the appointment of experts under those provisions, the appointment is predicated on the twin showings by a defendant of both an "inability to pay for the experts and their necessity in presenting a defense at trial." (*Stuckey,* at p. 908.) Even assuming retained counsel's statement that he could not effectively represent Adams without those experts sufficed to show the necessity element, Adams made no effort to show the inability to pay element at that hearing. To the contrary, Adams affirmatively asserted the "funds [were] allocated yesterday for [the experts and I] will have it to [them] very shortly." The court conditionally accepted Adams's representations of his ability to fund the experts by stating that if in fact he could arrange for funds to hire the witnesses, and could do so not later than August 27 as Adams represented he would, the court would revisit the motion to withdraw on August 28 with the proviso that, if he did not come up with the necessary money, the alternate public defender would take over the case.

On this record, we cannot conclude the trial court abused its discretion when it granted retained counsel's motion to withdraw rather than taking some alternative route that was neither sought by Adams nor supported by the requisite evidentiary showing. Any alleged prejudice to Adams must be evaluated solely based on the subsequent acts or omissions of the court in furnishing him with new counsel. (*People v. Prince, supra,* 268 Cal.App.2d at p. 407.)

B. The Order Granting a Continuance to Allow New Appointed Counsel to Adequately Prepare for Trial Was Not an Abuse of Discretion

Adams asserts the court erred when it granted, over his objection, the motion by newly appointed counsel for a continuance of trial because that ruling violated his speedy trial rights.

*Applicable Principles*

Section 1382, one of the principal provisions implementing California's statutory right to a speedy trial, requires that a defendant charged with a felony be brought to trial within 60 days of arraignment on an indictment or information, absent the defendant's express or implied consent to having trial set for a date beyond that period, or where there is "good cause" for the delay.[5]  (*People v. Sutton* (2010) 48 Cal.4th 533, 537 (*Sutton*).) When a defendant expressly states he or she is unwilling to "waive time," a trial court may nevertheless grant a continuance if it determines there is "good cause" for the delay. (*Id*. at p. 546.)

Although section 1382 "does not define 'good cause' as that term is used in the provision, . . . numerous California appellate decisions that have reviewed good-cause determinations under this statute demonstrate that, in general, a number of factors are relevant to a determination of good cause: (1) the nature and strength of the justification

[5]     In a felony case, a defendant must be brought to trial within 60 days of his or her arraignment on an indictment or information, unless (1) the defendant enters a "general waiver" (§ 1382, subd. (a)(2)(A)); (2) the defendant "requests or consents to" a trial date beyond the 60-day period, in which case he or she shall be brought to trial within 10 days of the date set for trial (*id* at subd. (a)(2)(B)); or (3) "good cause" for setting a trial date beyond that period is shown (*id*. at subd. (a)).

for the delay, (2) the duration of the delay, and (3) the prejudice to either the defendant or the prosecution that is likely to result from the delay. [Citations.] Past decisions further establish that in making its good-cause determination, a trial court must consider all of the relevant circumstances of the particular case, 'applying principles of common sense to the totality of circumstances . . . .' [(*Stroud v. Superior Court* (2000) 23 Cal.4th 952, 969; [citation])]. The cases recognize that, as a general matter, a trial court 'has broad discretion to determine whether good cause exists to grant a continuance of the trial' [(*People v. Jenkins* (2000) 22 Cal.4th 900, 1037)], and that, in reviewing a trial court's good-cause determination, an appellate court applies an 'abuse of discretion' standard." (*Sutton*, *supra*, 48 Cal.4th at p. 546, fn. omitted.)

*Analysis*

Adams argues the order granting a continuance was an abuse of discretion because (1) under *People v. Johnson* (1980) 26 Cal.3d 557 (*Johnson*) the inability of a public defender to bring the matter to trial because of conflicting obligations to other clients does not constitute "good cause" to continue trial of the matter when a defendant objects and insists on his speedy trial rights, and (2) the court did not first inquire whether the alternate public defender's office could have appointed another attorney (i.e., someone other than Reichert) to take the matter to trial on October 16.[6]

---

6 Adams also suggests, for the first time in his reply brief, it was an abuse of discretion to have permitted a 15-week delay because the court should have examined whether Reichert could have been ready for trial on October 16 if other members of the alternate public defender's office could have relieved Reichert of his conflicting obligations to other clients, or the alternate public defender's office could have assigned

11

We reject Adams's claim because it misconstrues the grounds on which the court's good cause determination rested. Reichert explained it would be necessary to continue the October 16 trial date, less than five weeks away, because of the complexity of the case. The court was aware of the complexity because (1) the trial involved 48 counts, each involving something different and requiring different witnesses, (2) there were between 20,000 and 30,000 pages of discovery, (3) the defense had yet to indentify (much less retain) viable expert witnesses, (4) the defense would have to review a preliminary hearing transcript covering several days of testimony, and (5) it was at least a three-to-four-week trial. Reichert indicated that, considering these facts, it would be "impossible for me to get ready" for an October 16 trial date. The court observed, even though Reichert was "one of the best in the entire county," the complexities of the case and the number of counts would require "any attorney [to spend] a significant period of time to come up to speed." After Adams reiterated he did not want to waive the existing trial date, the court found the additional time required for Reichert to prepare for trial constituted good cause to grant a continuance, and then turned to "determin[ing] a viable trial date." The court concluded, because of the complexity of the case and counsel's other commitments, the matter should be continued until February 6, 2013, for trial.

cocounsel or other staff to help Reichert prepare for trial. We do not believe this argument is properly before us. (*People v. JTH Tax, Inc.* (2013) 212 Cal.App.4th 1219, 1232 [arguments raised for first time in reply brief will not ordinarily be considered].) Even were we to reach this argument, Adams cites no authority suggesting a court must consider compelling an attorney to abandon his or her other clients' interests to preserve a competing client's speedy trial interests before granting a continuance.

12

The court made two separate determinations: (1) whether trial *could* commence on October 16, 2012, as demanded by Adams, considering Reichert's need to prepare for this complex case; (2) if Reichert could not adequately be prepared by October 16, *when* could trial commence considering the complexities of this case, counsel's other commitments, and the impending holidays. We conclude the trial court, "applying principles of common sense to the totality of circumstances" (*Stroud v. Superior Court, supra,* 23 Cal.4th at p. 969), did not abuse its discretion when it made the initial determination that trial could not commence as scheduled. The nature and strength of the justification for the delay is patent: a trial court could well conclude that five weeks was wholly inadequate for an attorney to digest between 20,000 and 30,000 pages of discovery and several days of preliminary hearing transcripts, to evaluate and prepare to defend against 48 separate counts involving different witnesses, and to find, retain, and educate experts on financial crimes issues. Although the duration of the delay was 15 weeks, the court was entitled to weigh that (1) the case was exceedingly complex, (2) the court was aware that Adams (during the time in which he had been represented by retained counsel) had already acquiesced to or caused numerous postponements totaling 13 months and it was his conduct (of defaulting on his commitment to his retained counsel to fund experts) that necessitated the new delay, (3) Reichert had two other significant cases requiring attention during the 15-week period, and (4) court holidays intervened during this period. Finally, apart from the inherent harm to speedy trial rights attendant to any continuance, there appears to have been no further prejudice to Adams likely to result from the delay.

13

The foregoing factual milieu convinces us Adams's effort to bring this case under the aegis of *Johnson, supra,* 26 Cal.3d 557 is misguided. Adams asserts, under *Johnson,* that when a defendant objects to his or her counsel's request for a continuance and insists on his or her speedy trial rights, a court may not find "good cause" for the continuance merely because the counsel has conflicting obligations to other clients that prevent him or her from going to trial within the requisite time frame. However, the *Johnson* court (after concluding the delay of the trial in that case could not be upheld on the basis of defense counsel's consent) examined whether, under the circumstances of that case, the trial court properly could find good cause existed to support the numerous continuances of the trial beyond the 60-day period. *Johnson*, addressing the good-cause issue, recognized that "[w]hat constitutes good cause for the delay of a criminal trial is a matter that lies within the discretion of the trial court" (*id*. at p. 570), and then reviewed a variety of circumstances determined by past decisions either to constitute or not constitute good cause, noting good cause had been found to exist when the delay was caused by the conduct of the defendant, or was for the defendant's benefit, or arose from unforeseen circumstances such as the unexpected illness or unavailability of counsel or witnesses. However, delay caused by the fault of the prosecution, or delay caused by improper court administration, was not recognized as "good cause." (*Ibid*.) *Johnson* then stated, "Although we perceive no objection to the principles stated in the preceding paragraph, we question those decisions which assume that court congestion or excessive public defender caseloads necessarily constitute good cause to deny dismissal." (*Id*. at pp. 570-571.) As *Johnson* observed:

14

"A defendant's right to a speedy trial may be denied simply by the failure of the state to provide enough courtrooms or judges to enable defendant to come to trial within the statutory period. The right may also be denied by failure to provide enough public defenders or appointed counsel, so that an indigent must choose between the right to a speedy trial and the right to representation by competent counsel. '[U]nreasonable delay in run-of-the-mill criminal cases cannot be justified by simply asserting that the public resources provided by the State's criminal-justice system are limited and that each case must await its turn.' " (*Id*. at p. 571.)

*Johnson*, after quoting from a discussion of the problem of delay caused by chronic court congestion contained in the American Bar Association's standards for speedy trial, which took the view that delay because of a failure to provide sufficient resources to dispose of the usual number of cases within the speedy trial time limits is not excused while recognizing congestion attributable to exceptional circumstances would justify added delay (*Johnson, supra,* 26 Cal.3d at p. 571), then extended that reasoning to delays caused by chronic congestion of a public defender's caseload:

"The same reasoning, distinguishing between chronic conditions and exceptional circumstances, applies to the delay caused by the crowded calendars of public defenders. The state cannot reasonably provide against all contingencies which may create a calendar conflict for public defenders and compel postponement of some of their cases. On the other hand, routine assignment of heavy caseloads to understaffed offices, when such practice foreseeably will result in the delay of trials beyond the 60-day period without defendant's consent, can and must be avoided. A defendant deserves not only capable counsel, but counsel who, barring exceptional circumstances, can defend him without infringing upon his right to a speedy trial. Thus the state cannot rely upon the obligations which an appointed counsel owes to other clients to excuse its denial of a speedy trial to the instant defendant." (*Id*. at p. 572.)

Thus, *Johnson* addressed whether chronic understaffing by the public defender could alone suffice as "good cause" to override a defendant's speedy trial rights, and

15

concluded those facts did not alone provide good cause for a continuance, reasoning the public defender's motion for a continuance was "clearly posited . . . not upon a benefit to Johnson but upon commitment to clients other than Johnson. He revealed that his representation of other clients created a conflict which he proposed to resolve to Johnson's detriment." (*Johnson, supra,* 26 Cal.3d at p. 572.) However, where a public defender's caseload does not represent a systemic and chronic impediment to preserving a defendant's speedy trial rights, continuances granted in part based on those conflicts fall outside *Johnson's* concerns. (*Sutton, supra*, 48 Cal.4th at pp. 552-554.)

Here, unlike *Johnson*, Reichert's motion for *a* continuance was clearly posited to *benefit* Adams--to allow Reichert time to prepare a defense to a complex case--and was not based solely (or even primarily) on conflicting commitments to other clients that he proposed to resolve to Adams's detriment. Moreover, although the *length* of the continuance did necessarily involve consideration of Reichert's other clients, there is no suggestion the caseloads of the alternate public defender's office created such a systemic, chronic impediment to speedy trials in "run-of-the-mill criminal cases" that this specific delay can fairly be attributed to the fault of the state. (*Sutton, supra*, 48 Cal.4th at p. 555 ["[w]here, as here, the unavailability of counsel was not fairly attributable to the state's fault or neglect, the circumstance that the unavailability of [defendant's] counsel was not caused by an 'exceptional circumstance' did not preclude the trial court from determining that counsel's unavailability constituted good cause . . . to delay the trial"].)

Adams finally argues it was error under *Johnson* to force him into self-representation without first inquiring whether his speedy trial rights could have been

16

preserved by having the alternate public defender's office appoint another attorney (other than Reichert) to take the matter to trial on October 16. Certainly, *Johnson* suggested that when the appointed counsel is so overburdened with conflicting commitments that his or her representation of other clients created a conflict that counsel proposes to resolve to the detriment of the defendant's speedy trial rights, "the court should inquire whether the assigned deputy could be replaced by another deputy or appointed counsel who would be able to bring the case to trial within the statutory period. In some instances, appointment of new counsel will serve to protect defendant's right to a speedy trial." (*Johnson, supra,* 26 Cal.3d at p. 572.) However, *Johnson* went on to state that "[i]f, on the other hand, the court cannot ascertain a feasible method to protect defendant's right, the court will have no alternative but to grant a continuance . . . ." (*Id.* at pp. 572-573.) Here, the court had already observed that because of the complexities of the case and the number of counts, "[a]*ny attorney* would require a significant period of time to come up to speed" (italics added), and that Reichert was among the best attorneys in the county and already had some familiarity with the case. Thus, the trial court impliedly found that replacement by a different appointed counsel would not have permitted the case to be tried within the statutory period, appointment of new counsel would not have served to protect Adams's right to a speedy trial, and therefore there was no "feasible method to protect defendant's right [and] no alternative but to grant a continuance . . . ." (*Ibid.*)

17

III

CONCLUSION

Adams's fundamental claim on appeal is that his *Faretta* waiver of counsel was involuntary, and his subsequent guilty plea must be reversed, because the court erroneously relieved retained counsel, and then erroneously granted appointed counsel Reichert a continuance, errors that forced Adams to forgo representation to preserve his speedy trial rights. However, because we have concluded that neither of the rulings on which his fundamental claim depends was erroneous, Adams's claim of an involuntary waiver of counsel is not persuasive.

DISPOSITION

The judgment is affirmed.


                                                        McDONALD, J.

WE CONCUR:


BENKE, Acting P. J.


HALLER, J.